## REAL ESTATE COMMISSION OF MARYLAND *v.* PHARES, INDIV. AND T/A HOMEFINDERS

[No. 204, September Term, 1972.]

*Decided March 19, 1973.*

The cause was argued before BARNES, MCWILLIAMS, SINGLEY, SMITH, DIGGES and LEVINE, JJ.

*Thomas G. Young, Assistant Attorney General,* with whom was *Francis B. Burch, Attorney General,* on the brief, for appellant.

*Ralph Weiss* for appellee.

SINGLEY, J., delivered the opinion of the Court.

This is an appeal by the Real Estate Commission of Maryland [the Commission] from a decree entered by the Circuit Court of Baltimore City in two cases which had been consolidated for trial. The first was a declaratory action instituted by Ron Phares against the Commission, seeking a declaration that Phares was neither a "real estate broker" nor a "real estate salesman" as the terms are defined in Maryland Code (1957, 1972 Repl. Vol.) Art. 56, § 212 (a), § 212 (b) and § 212 (e) and therefore was not subject to the licensing requirement of § 217. The second action was one instituted by the Commission asking that Phares be enjoined from engaging in any activity for which a broker's license is required until such time as he might be licensed. The lower court's decree resolved both cases in Phares' favor.

Phares testified that he was the owner of Homefinders, a sole proprietorship, which he together with five full-time and three part-time salaried employees had operated at 2116 North Charles Street in Baltimore since April of 1972. According to Phares, the nature of the Homefinders operation is essentially the accumulation of information regarding vacancies in the Baltimore metropolitan area, principally houses and apartments. The information is derived primarily from property owners' newspaper advertisements and from landlords who respond to newspaper advertisements inserted by Homefinders.

This data is assembled on cards, classified according to geographical areas. Each entry describes the property, states the rent, and gives the address and the telephone number of the landlord. For a fee of $20.00 a Homefinders' customer is given access to these lists. What Homefinders terms a "policy," the agreement which the customer signs, gives him access to the lists for a period of a year, and provides that the customer, should he be transferred to another city where there is a Homefinders office, may have access to the lists there,

during the one-year period, without the payment of an additional charge.[1]

Phares emphasized that Homefinders' sole function was the accumulation of information regarding vacancies. No charge was made to landlords whose properties were listed; there was no participation in commissions; Homefinders dealt in no properties for its own account, or for the account of others, and the Homefinders staff neither showed properties to prospective tenants nor negotiated with a landlord in a tenant's behalf. Homefinders' only contact with a landlord consisted of a telephone call or letter explaining the nature of the service and asking permission to include the property on the list which it maintained, and follow up calls to ascertain whether the property remained vacant and should continue to be carried on the list. Since Phares was the only witness, his testimony was uncontroverted.

The Commission's case is posited on the definitions contained in Code Art. 56, §§ 212 (a) and 212 (e):

"§ 212. Definitions.

(a) *'Real estate broker' defined.* — 'Real estate broker' shall mean any person, association, copartnership or corporation foreign or domestic, who for another and for a fee, commission or any other valuable consideration sells, purchases, exchanges, leases, rents or collects rent for the use of real estate or who attempts or who offers by verbal solicitation, advertisement or otherwise to perform any such function or who is regularly engaged in the business of dealing and trading in real estate or leases and options thereon, or who engages in the business of charging an advance fee or contracting for collection of a fee in connection with any contract whereby he undertakes pri-

---

1. Phares testified that there were Homefinders offices in some 25 cities. He said that he was under no licensing or franchising arrangement; paid no fee to anyone and was subject to no direction or control.

marily to promote the sale of real estate through its listing in a publication issued primarily for such purpose, or for referral of information concerning such real estate to brokers, or both, or who is engaged in the business of subdividing and selling land in building lots or sites, whether such real estate is located in this or any other state or the District of Columbia."

\* \* \*

"(e) *Acts constituting person real estate broker or salesman.*—Any person, partnership, association, or corporation, who, for another, in consideration of compensation, by fee, commission, salary, or otherwise, or with the intention or in the expectation or upon the promise of receiving or collecting a fee, does, offers or attempts or agrees to do, engages in or offers or attempts or agrees to engage in, either directly or indirectly, any single act or transaction contained in the definitions of a real estate broker or real estate salesman in subsections (a) and (b) of this section, whether said act be an incidental part of a transaction, or the entire transaction, shall constitute such person, partnership, association, or corporation a real estate broker or real estate salesman within the meaning of this subtitle."

The Commission argues that Phares' activities are encompassed by the statutory definition and buttresses its argument by relying on *Dyer v. Watson*, 121 Cal. App. 2d 84, 262 P. 2d 873 (1953), where Dyer was engaged in an activity substantially similar to Phares' operation. We do not regard *Dyer* as persuasive, however. There, Dyer was a licensed broker, and conducted her business by advertising as a licensed broker, and the case turned on the question whether her license could be revoked because of a course of conduct found prejudicial to her cus-

tomers. The critical distinction is found in the California statute, which included in the definition of a real estate broker "a person who . . . places [real estate] for rent."

It was Phares' contention that his activities clearly did not come within the ambit of the § 212 (a) definition, because he neither ". . . sells, purchases, exchanges, leases, rents or collects rent . . ." nor ". . . is regularly engaged in the business of dealing and trading in real estate or leases and options thereon. . . ." The court below found as a fact that Phares was not engaged in any activity which came within the purview of the statute. We cannot say that this finding of fact was clearly erroneous, Maryland Rule 886, nor was there a misapplication of the law.

While we have held that Art. 56, §§ 212-232, dealing with real estate brokers was remedial legislation, intended for the protection of the public, *Smirlock v. Potomac*, 235 Md. 195, 203, 200 A. 2d 922 (1964), and as such should be liberally construed, liberal construction is one thing and adding to an unambiguous statute by judicial fiat a provision which the General Assembly did not see fit to include is quite another, *Amalgamated Ins. Co. v. Helms*, 239 Md. 529, 534, 535-36, 212 A. 2d 311 (1965).

Consequently, we find no error in the entry of a decree declaring that Phares was not required to obtain a real estate broker's or salesman's license and dismissing the Commission's bill of complaint for injunctive relief.

In his opinion, the chancellor commented on the possibility that some of Homefinders' advertisements, framed in a fashion somewhat similar to those customarily used by real estate brokers, might be misleading. Whether inadvertently or intentionally, this point was not covered by the decree. Fortunately, it will not be necessary to remand the case for the correction of this omission, since we were told at argument that Homefinders' advertising has been recast in a fashion accept-

able to the Consumer Protection Division of the Attorney General's Office.

*Decree affirmed, costs to be paid by appellant.*