**STATE of Oklahoma, Appellant,**

v.

**John MAZUREK, Appellee.**

**No. O-75-480.**

Court of Criminal Appeals of Oklahoma.

March 4, 1976.

S. M. Fallis, Jr., Dist. Atty., Robert W. Sullivan, Asst. Dist. Atty., Larry Derryberry, Atty. Gen., Todd Markum, Asst. Atty. Gen., for appellant.

Warren L. McConnico and Terry Lee George, Tulsa, for appellee.

## OPINION

BUSSEY, Judge:

John Mazurek, hereinafter referred to as defendant, doing business as Rentex of Tulsa, was charged by Information in the District Court, Tulsa County, Case No. CRM–75–366, with the misdemeanor offense of Operating As a Real Estate Broker Without a License, in violation of 59 O.S. Supp.1974, § 858–301. A Motion to Dismiss was filed by the defendant challenging the constitutionality of 59 O.S.Supp. 1974, § 858–101, et seq. as applied to Rentex of Tulsa in Tulsa County.

Thereafter, the trial court allowed the defendant and the State to file briefs on the Motion to Dismiss and a hearing was conducted on June 9, 1975, where, after considering the stipulation of counsel and hearing arguments of the respective parties, the court considered the Motion to Dismiss as a Demurrer to the Information and held unconstitutional the provisions of the statutes hereinafter recited, as applied to the operation of Rentex of Tulsa. The State gave notice of intent to appeal. An appeal was lodged in this Court under the provisions of 22 O.S.1971, § 1053, ¶ 3. At the outset it should be stated that this appeal could not be brought under 22 O.S. Supp.1975, § 1053.1, for the reason that section became effective October 1, 1975, and the question of law appealed from in the instant case arose from the order of the trial court sustaining a demurrer to the information and declaring unconstitutional the provisions hereinafter enumerated as applied to Rentex of Tulsa, entered on the 9th day of June, 1975.

The authority for the trial court to enter an order sustaining a demurrer was autho-

rized by the provisions of 22 O.S.1971, § 507, which provides:

"Upon considering the demurrer, the court must give judgment either sustaining or overruling it, and an order to that effect must be entered upon the minutes."

The effect of such order was governed by the provisions of 22 O.S.1971, § 508, which provides:

"If the demurrer is sustained, the judgment is final upon the indictment or information demurred to, and is a bar to another prosecution for the same offense, unless the court, being of opinion that the objection on which the demurrer is sustained may be avoided in a new indictment or information, direct the case to be resubmitted to the same or another grand jury, or that a new information be filed."

█ It is clear from the foregoing statutes and the numerous decisions rendered thereunder, that this appeal on a reserved question of law can only serve as a guideline for all future cases prosecuted under the provisions of 59 O.S.Supp.1974, § 858–101, et seq., and that the order of the court in sustaining the demurrer bars further prosecution of the defendant under the same information or any information arising out of his operation of Rentex of Tulsa on the 6th day of April, 1975.

The statutes under which the Information was laid appear in 59 O.S.Supp.1974, § 858–102, ¶ 2, as follows:

"2. The term 'real estate broker' shall include any person, partnership, association or corporation, foreign or domestic, who for a fee, commission or other valuable consideration, or who with the intention or expectation of receiving or collecting a fee, commission or other valuable consideration, lists, sells or offers to sell, buys or offers to buy, exchanges, rents or leases any real estate, or who negotiates or attempts to negotiate any such activity, or *solicits listings of places*

*for rent, or solicits for prospective tenants, who advertises or holds himself out as engaged in such activities."* [Emphasis added]

The pertinent part of 59 O.S.Supp.1974, § 858–301, provides:

"It shall be unlawful for any person to act as a real estate broker or real estate sales associate, or to hold himself out as such, unless he shall have been licensed to do so under this Code. . . . "

The provisions of 59 O.S.Supp.1974, § 858–401, are as follows:

"Any person who shall willingly and knowingly violate any provision of this Code shall be guilty of a misdemeanor and, upon conviction thereof, be punished by a fine of not more than Five Hundred Dollars ($500.00), or by imprisonment in the county jail for not more than (6) months, or by both such fine and imprisonment."

The requirements for securing a real estate brokers license are set forth in detail under the provisions of 59 O.S.Supp.1974, § 858–101, et seq.

From the record before us, and the briefs filed before the trial judge and on appeal, it appears that on the 9th day of April, 1975, and prior thereto, the defendant was operating a business known as Rentex of Tulsa in Tulsa County, Oklahoma. He advertised for people to list their property with him and also advertised for people seeking rentals to come to his office where he maintained a list of property for rent or lease, for which he charged a fee of $30.00. This fee was not dependent on whether the party listing the property, or those who payed for the use of his list, entered into a rental arrangement, nor did he leave his office to conduct any negotiation between the parties. In his office operation he instructed the prospective tenants in the use of the list.

In the Transcript of Motion Hearing, at pages 14 through 17, we find the follow-

ing, which formed the basis for the trial court's ruling:

"THE COURT: There is one thing that concerns me, Mr. Sullivan. The Statute as amended says, '. . . makes a realtor of anyone who solicits a listing of places for rent.' Those are the words of the Statute. Now, how do you distinguish between the defendant's business and the business of the Tulsa World or the Tulsa Tribune or Bargain Post or Southside Times? Don't these people —under the terms of the Statute, aren't they realtors?

"MR. SULLIVAN [Assistant District Attorney]: These people are publications only. Many of the authorities cited by counsel in his brief were cases that dealt primarily with people in the business of merely publishing information given them and a fee was paid to them to publish that material.

"We have alluded in our summary of the facts that John Mazurek has placed ads in the Tulsa Daily World soliciting to the landlords for them to list their properties, I think that is a correct word 'list' their properties with the defendant John Mazurek, and then in a different part of the Classified Section of the newspaper has placed ads describing particular listings with Rentex of Tulsa, and indicating in the very ad a fee would be charged for that information. So either way he solicits properties for rent or tenants. Therefore, that is the thrust of the suit. Either way, the defendant is falling within this category. It is not contended that the Tulsa World when an ad is placed within them is any more acting as a real estate broker than a used car salesman when people put in ads for a used car.

"THE COURT: It seems to me that the only real distinction between the two situations is the means of soliciting listings and the means of disseminating the information to prospective tenants. I think that a tenuous thread on which to base it. As a practical matter, it doesn't

appear that the defendant has—in my opinion, there is no agency relationship between he and anyone else. There are none of the elements you commonly think of being involved in a real estate broker situation.

"MR. SULLIVAN: Well, Your Honor, I would submit to the Court that there is the reliance on the information given to the prospective tenant. That that information for the fee paid leads him to properties that meet the criteria he is seeking and I think that is why the Legislature is seeking to regulate this part of the real estate business. It is not inconceivable that that person could pay the $30.00 for the service and upon obtaining that document find that there is nothing there for them in any way, shape, form, or fashion, and the properties listed therein have been rented.

"THE COURT: If that is the evil which the Statute seeks to prevent, requiring them to be a real estate broker is not going to get at that evil and the same thing may be said regarding the daily newspaper. I may be looking for a house and may buy a twenty-five cent Tulsa Daily World and the house I want may not be in there. I think the same thing—If don't see any significant substantial difference between what the defendant in this case is admittedly doing and what, for instance, the newspapers are doing. There is one little newspaper in town that actually charges a percentage of the price of the house.

"MR. SULLIVAN: We will have to look into that too. Your Honor, I would submit to the Court that the Tulsa Daily World doesn't charge anyone $30.00 for buying a newspaper.

"THE COURT: If you get into the cost of a Tulsa Daily World over a period of a year, what the defendant charges for this service might not be—

"MR. McCONNICO [defense counsel]: Their charge would be approximately $42.00 per year, I believe, Your Honor.

"MR. SULLIVAN: There are things additionally in the Tulsa World than a list of properties meeting the qualification that a given tenant would be seeking.

"THE COURT: I just don't think you can base a statutory definition on anything that nebulous and that wispy. I think there is merit to the defendant's motion and I am going to sustain the motion and I assume the State will want to appeal that.

"MR. SULLIVAN: Yes, we will, Your Honor. Thank you.

"MR. McCONNICO: I would like to move the Court instanter to dismiss the bond.

"THE COURT: The bond will be exonerated.

(End of Proceedings.)"

The defendant, in his brief before both the trial court and this Court, cites *Real Estate Commission of Maryland v. Phares,* 268 Md. 344, 302 A.2d 1, decided May 19, 1973, and quotes from the Headnotes, as follows:

"Owner of sole proprietorship, which accumulated information regarding house and apartment vacancies and for a fee gave customers access to list, did not charge landlord for listing his property, did not participate in commissions, did not show properties to prospective tenant nor negotiate with landlord in tenant's behalf and which came into contact with landlord only by a telephone call or letter explaining nature of service and asking permission to include landlord's property on list, was not a 'real estate broker' or 'real estate salesman' within purview of statute defining real estate broker and thus was not required to obtain real estate broker's or salesman's license."

Although it was called to the trial court's attention in the brief filed by the State, we are of the opinion that *Real Estate Commission of Maryland v. Phares,*

supra, is not controlling in the instant case, for as was observed in the State's brief before the trial court, the statute under which the case was decided was subsequently amended, which amendment became effective July 1, 1973, and added "or who aids, attempts or offers to aid, for a fee, any person in locating or obtaining for purchase or lease any residential real estate." No authority has been cited by the defendant subsequent to this amendment, and we are of the opinion that *Real Estate Commission of Maryland v. Phares,* supra, is not determinative of the issue here presented.

In this connection we observe that prior to the legislative amendment of 59 O.S. 1971, § 832, which became effective July 1, 1974, the defendant's conduct did not fall within the purview of that statute. However, since the amendment bringing the defendant's conduct clearly within the statute, we are persuaded that the State's position before the trial court is founded on both logic and reason and that the Legislature, in adopting the amendment, acted clearly within its police power in regulating the conduct of the business in which the defendant was engaged.

We find merit in the State's position that:

" . . . [T]here is the reliance on the information given to the prospective tenant. That that information for the fee paid leads him to properties that meet the criteria he is seeking and I think that is why the Legislature is seeking to regulate this part of the real estate business. It is not inconceivable that that person could pay the $30.00 for the service and upon obtaining that document find that there is nothing there for them in any way, shape, form, or fashion, and the properties listed therein have been rented."

■ We observe in passing that the trial court's assumption that the statute, as amended, is broad enough to regulate the advertising of the *Tulsa World* or any oth-

er newspaper publication is patently absurd and expressly reject such construction and deem it unnecessary to make further comment.

■ In our holding today, we find that the trial court erred in declaring the provisions of the statutes above referred to unconstitutional, for, as was stated by Judge Brett in dealing with a similarly constructed statute, in *Williamson v. State,* Okl.Cr., 463 P.2d 1004:

> "We think this language to be sufficiently certain to appraise [sic] the public of what conduct is considered criminally punishable and the necessary conditions under which such conduct is lawful.
>
> . . .
>
> " . . . [P]olicy considerations, be they wise or petty, are within legislative discretion. Any argument as to the wisdom, benefit, or desirability of the statute should be addressed to those with whom the legislative function has been entrusted, rather than to a court of judicial authority. Statutes are presumed to be valid and constitutional, and a party attacking a statute as unconstitutional has the burden of proof. *Pugh v. State,* Okl.Cr., 416 P.2d 637 (1966). When reasonably possible, and within the bounds of legitimate construction, statutes should be construed as to uphold their constitutionality. *Ex parte Arnett,* 93 Okl.Cr. 116, 225 P.2d 381 (1950). . . ."

We find no constitutional prohibition against 59 O.S.Supp.1974, § 858–101, et seq., nor does it violate the due process of law or equal protection clauses of the state or federal constitution, nor is it void for uncertainty, and expressly reject defendant's contention that the statute violates Article I, Section 1 and Article II, Sections 2 and 7 of the Constitution of the State of Oklahoma, and the Fifth and Fourteenth Amendments of the United States Constitution.

Since the defendant cannot be retried for the reasons heretofore set forth, the

Order of the trial court, sustaining the Motion to Dismiss, treated as a demurrer to the information, and holding unconstitutional the statutes heretofore referred to, is *REVERSED.*

BRETT, P. J., and BLISS, J., concur.