STATE, BY WARREN SPANNAUS, ITS ATTORNEY GENERAL, AND ANOTHER v. LARRY D. BESLANOWITCH, INDIVIDUALLY AND d.b.a. RENTAL DIRECTORY.

248 N. W. 2d 286.

November 5, 1976—No. 46379.

*Warren Spannaus,* Attorney General, *Richard G. Mark,* Assistant Solicitor General, *Robert W. Herr* and *Thomas R. Muck,* Assistant Attorneys General, and *Barry R. Greller,* Special Assistant Attorney General, for appellant.

*Schacht, Kerr & Steiner* and *George R. Kerr,* for respondent.

Heard before Rogosheske, MacLaughlin, and Marsden, JJ., and considered and decided by the court en banc.

PETERSON, JUSTICE.

The state, by the attorney general, contends that business activities conducted by defendant, Larry D. Beslanowitch, are activities for which a real estate broker's license is required. It appeals from the judgment of the district court refusing to grant the declaratory and injunctive relief it sought against defendant.

Defendant is a Montana resident who conducts business in a number of states. In Rochester, Minnesota, he calls his business Rental Directory. The employees of Rental Directory in Rochester solicit landlords for information about residential real estate vacancies and catalog the information they receive. They also advertise in the media so as to alert potential tenants to their services. When a potential tenant contacts Rental Directory, an employee explains the service which is provided and invites him to use it. The fee to the potential tenant (customer) is $20 for a 30-day agreement or $30 for a 1-year agreement. If he wishes to pay this fee, he is asked to fill out an information sheet specifying what kind of rental he is seeking. The employees of Rental Directory then supply him with the names and addresses of landlords who they think might have vacancies meeting those specifications. The customer may receive additional information throughout the period of this agreement.

The evidence conflicted as to what further services the employees of Rental Directory furnished their customers. Defendant Beslanowitch testified that his employees were taught not to enter into any dialog with landlords or customers and that the customers themselves contact the landlords and negotiate with them. He testified that after giving information to the customer about vacancies the only further contact Rental Directory would have with the customer was to provide information about still other vacancies. According to Beslanowitch, his employees never go with a customer to look over the potential rentals, and they never make any recommendations as to how much rent to charge, what facilities such as refrigerators or stoves should be

provided, or whether pets ought to be allowed. He characterized the business as being the same kind of business a daily newspaper engages in—the advertising of properties for rent.

The testimony of Rental Directory customers, however, showed that on at least three occasions Jan Scripture, the manager of Rental Directory in Rochester, called a landlord as a convenience to the customers. Her purpose in these calls was to ascertain whether a landlord was home, whether pets were acceptable, and whether a stove or refrigerator came with the rental. The testimony also showed that Scripture had told or led at least three customers to believe that she would contact them if something new meeting their specifications came up, and that on one or two occasions she had indeed called a potential tenant to tell him about a new vacancy.

The evidence indicated that licensed real estate brokers in the Rochester area usually do not seek to service the residential rental market. Some of them, moreover, refer to Rental Directory their customers who wish to locate residential rentals, apparently because they do not themselves collect and maintain information about residential vacancies.

Minn. St. 82.19 prohibits any person from acting as a real estate broker unless he is licensed under chapter 82. Minn. St. 82.17, subd. 4, in relevant part, defines "real estate broker" as any person who:

"(a)    For another and for commission, fee or other valuable consideration or with the intention or expectation of receiving the same directly or indirectly lists, sells, exchanges, buys or rents, manages, or offers or attempts to negotiate a sale, option, exchange, purchase or rental of an interest or estate in real estate, or advertises or holds himself or itself out as engaged in such activities."

It is clear that Rental Directory's cataloging of information is accomplished with the expectation of receiving valuable consideration either directly or indirectly (i. e., from the potential tenant). At issue is whether its activities constitute "listing"

for another and whether its activities constitute "offers or attempts to negotiate" a rental of an estate in real estate.

The state, citing a definition contained in Webster's New International Dictionary (2 ed. 1947) p. 1442, contends that the word "lists" as used in Minn. St. 82.17, subd. 4(a), means "[t]o enter or enroll in a list or catalogue." The word clearly encompasses more than the mere physical process of compiling and publishing descriptions of property, however. This is a widely performed function which is typified by the real estate advertisements contained in the classified section of a newspaper, and no one seriously contends that the legislature intended to require newspapers to obtain a broker's license before publishing a list of descriptions of available real estate. In the contemplation of the statute the word refers to the additional activity of using such a list of properties for the purpose of attempting to meet the individual needs of some specifically identified seller, buyer, landlord, or tenant.

Our conclusion as to the intended scope of the word "lists" as used by the legislature in Minn. St. 82.17, subd. 4(a), is supported by an analysis of a later portion of the same subdivision. Minn. St. 82.17, subd. 4(e), requires that one be licensed before he—

"[e]ngages in the business of charging an advance fee or contracting for collection of a fee in connection with any contract whereby he undertakes to promote the sale of real estate through its listing in a publication issued primarily for such purpose."

If "lists" as used in subd. 4(a) were intended to include the mere compilation and publication of information without more, then subd. 4(e) would be superfluous. In addition, we note that subd. 4(e) regulates only those who publish information in order to promote the *sale* of real estate, while subd. 4(a) is broader and regulates those whose activities are directed not just to sales, but to options, exchanges, purchases, and rentals of an interest or estate in real estate as well. It is reasonable

to conclude that had the legislature intended to regulate those who compile and publish information about rental vacancies in a general manner, it would have so specified in subd. 4(e) rather than limiting that subsection to sales only. That it did not provide for this regulation in subd. 4(e), the most logical place for such a provision, indicates it did not intend the word "lists" in subd. 4(a) to encompass such regulation either.

The essential elements of defendant's business include soliciting landlords for information about their vacancies; classifying, indexing, and compiling the information into a convenient form; and charging the potential tenants (customers) who desire to have this information. These limited activities without more do not constitute the "listing" of an interest or estate in real estate as that word is used in Minn. St. 82.17, subd. 4(a), for the reason that they are not tailored to meet the individual needs of any specifically identified landlord or tenant. The only response to an individual landlord's need to find a tenant is the placing of a description of the property into an information bank, and the only response to an individual tenant's need to find a vacancy is the publication to him of all the information that has been received from landlords. This is the same function performed by newspaper classified advertisements and other advertising media, and so long as defendant's activities go no further than the providing of this limited service, he does not come within the scope of the statute any more than do other advertising media.

The line is crossed, however, when one engaged in defendant's business begins to provide special service to an individual landlord or tenant beyond the compilation and publication of information which might or might not be of value to any specific person. For example, if defendant represented to a landlord that he or his employees would actively attempt to locate a tenant to rent his property, and if he then proceeded to seek out such a tenant, he would be attempting to meet the individual needs of a specifically identified landlord and his activities would

therefore come within the meaning of "lists" as used in Minn. St. 82.17, subd. 4(a).

The line is also crossed when one offers services tailored to the individual needs of a specific tenant. If, in exchange for a potential tenant's fee, defendant simply opened to him the entire information bank and did nothing more, the statute would not be applicable because there would be no attempt to meet the individual needs of a specific tenant. Defendant's only activity would be the sale of information to those who wish to buy it and without regard to its applicability to any specifically identified tenant. If, however, the Rental Directory employee handling a tenant's request queries him as to his individual needs and exactly what it is he seeks, and if the employee then searches the information bank for the tenant and makes recommendations as to which properties most nearly answer those needs, then the service rendered comes within the purview of the statute. Similarly, if an employee represents to a potential tenant that Rental Directory will call him if anything meeting his individual needs becomes available, or if the employee does in fact perform such a service, the statute becomes applicable.

The issue which, if any, of defendant's business activities constitute an offer or attempt to negotiate a rental of an estate in real estate is closely related to the issue of which of defendant's activities constitute "listing" within the meaning of Minn. St. 82.17, subd. 4(a). In the contemplation of the statute the term "negotiate" also refers to more than the mere sale of information. If defendant limits the service he provides to the collection of information about residential real estate vacancies, the compilation of that information into a convenient form, and the publication of the entire information bank to those who wish to avail themselves of it, then he is not offering or attempting to negotiate a rental of an estate in real estate within the meaning of the statute. If, however, he attempts to persuade a specifically identified prospective tenant to enter into a rental

arrangement with a specifically identified landlord (or vice versa), then the statute becomes applicable.

It has been demonstrated that some of defendant's business activities fall within the purview of the statute while others do not. The district court refused to enjoin those activities which are violative of the statute, even though it was apparently persuaded that defendant's employees did on occasion engage in them. Because of the district court's construction of the statute, however, its findings were not specific as to the critical activities. Accordingly we reverse and remand for further proceedings not inconsistent with this opinion.

At several points in this litigation it has been suggested that defendant has engaged in false advertising and that not just some but literally all of his business activities should therefore be construed as falling within the purview of the statute. Certainly it is within the ability of the legislature to regulate even those who engage only in the sale of information, provided of course that its regulation complies with all constitutional requirements. It is not our function, however, to decide whether any given activity ought or ought not to be regulated. Our function is simply to construe and enforce the limits which the legislature has set, and not those limits which we may think it ought to set. We have decided that the legislative intent was to exclude from the regulatory scope of the statute the pure sale of information, but to include within its scope the rendering of individualized service to meet the needs of a specific person. Should the legislature find that the social welfare requires regulation of the mere sale of information about residential real estate vacancies, regulation beyond the ordinary consumer fraud remedies, then it may deal with the specific problems it perceives. Until the legislature makes such determination, however, it is our function to enforce only that extent of regulation which it has thus far prescribed.

Reversed and remanded.

MacLaughlin, Justice (dissenting).

In my judgment Minn. St. c. 82 is a remedial statute intended

for the protection of the public and should be liberally construed. As we stated in Albers v. Fitschen, 274 Minn. 375, 376, 143 N. W. 2d 841, 843 (1966), the statute was "enacted in the public interest to prevent abuses by unqualified or unreliable real estate brokers and salesmen." To accomplish this goal the legislature broadly defined the term "real estate broker" to include anyone who:

"For another and for commission, fee or other valuable consideration or with the intention or expectation of receiving the same directly or indirectly lists, sells, exchanges, buys or rents, manages, or offers or attempts to negotiate a sale, option, exchange, purchase or rental of an interest or estate in real estate, or advertises or holds himself or itself out as engaged in such activities." Minn. St. 82.17, subd. 4(a).

By using this broad definition it seems clear to me that the legislature intended the term "broker" to include anyone who is primarily engaged in the business of bringing together either a prospective real estate buyer and seller or a prospective tenant and landlord.[1] It also seems clear to me that this defendant is en-

---

[1] The majority suggests that a broad definition of the term "broker" would include newspapers. While newspapers through their real estate advertisements could be viewed as bringing together prospective tenants and landlords, I believe there are significant distinctions between a newspaper and defendant's business. The real estate broker statute is aimed at regulating those who are engaged in the *business* of brokering. A newspaper is clearly not engaged in the business of brokering. The fact that a newspaper's classified ads may have the effect of bringing together prospective tenants and landlords is truly incidental to the operation of the newspaper. Consequently, I do not believe it can be seriously contended that the legislature intended to regulate newspapers simply because of this incidental effect. There is no direct contract between the newspaper and a prospective tenant and it is clear in the public's mind that there is no agency association between the newspaper and the landlords who advertise in the classified ads. Therefore, a newspaper cannot, in my judgment, be equated with defendant's business and a broad definition of "broker" would not encompass the operation of a newspaper.

gaged in the business of bringing together prospective tenants and landlords. The defendant solicits landlords to list rental vacancies with it, and then, attempts to fill these vacancies with prospective tenants from whom it extracts a fee. By doing so defendant engages in the activities of a real estate broker as contemplated by Minn. St. 82.17, subd. 4(a). The fact that defendant does not actively participate in the negotiations of the terms should not be relevant to the question of whether the act is applicable to these activities. As stated in People v. Sickinger, 79 Misc. 2d 572, 574, 360 N. Y. S. 2d 796, 799 (1974): "* * * [T]he brokerage function is exercised when parties are brought together, although the details may be worked out later without the broker." Instead of construing the act broadly, it appears to me that the majority opinion labors to narrowly construe the statute in a manner which excludes defendant.

Further, and most importantly, it seems apparent as a matter of common sense and common experience that, as stated by the New Jersey Real Estate Commission: "The possibility of fraud, misinterpretation and sharp or unconscionable practices [is] great in [the rental referral agency] field." N. J. Real Estate Comm. v. Rentex, Inc., Docket No. Cam-12679, affirmed sub nom. State v. Graham, (No. A-3052-74) (N. J. Super., App. Div., Nov. 17, 1975).[2] I believe that it was the intent of the legislature to protect the renting public from "fraud, misinterpretation and sharp or unconscionable practices" in this type of business when it enacted Minn. St. c. 82. By construing the statute

---

[2] The trial court, in its memorandum states as follows: "While it is not at issue in the instant case, it does appear that a degree of misrepresentation occurs in the newspaper advertising of the defendant after several of the witnesses testified that the inviting property advertised at a very reasonable rental turned out to be not available once they had paid their fee for the rental list."

It seems to me, taking a broader view, that defendant's deceptive practices are "at issue" in the instant case in the sense that the statute must be broadly construed to achieve the remedy for which it is intended.

liberally instead of narrowly, the commissioner of securities would be authorized to promulgate rules and regulations, with enforcement provisions, designed to protect consumers from "sharp" practices in the rental referral business. I would hold that the statute applies to the defendant and would reverse.

YETKA, JUSTICE (dissenting).

I join in the dissent of Mr. Justice MacLaughlin.

MARSDEN, JUSTICE (dissenting).

I agree with the views expressed by Mr. Justice MacLaughlin and join in his dissent.