**NORTH STAR HOTELS CORPORATION,**
Plaintiff,

v.

**MID–CITY HOTEL ASSOCIATES, Defendant.**

No. Civ. 4–87–793.

United States District Court,
D. Minnesota,
Fourth Division.

March 9, 1988.

Denis E. Grande, Arthur, Chapman & McDonough, P.A., Minneapolis, Minn., for plaintiff.

Michael A. Stern, Fredrickson & Byron, Minneapolis, Minn., for defendant.

## MEMORANDUM AND ORDER

MacLAUGHLIN, District Judge.

This matter is before the Court on defendant's motion for dismissal or summary judgment and for attorneys' fees. Defendant's motion will be denied.

## FACTS

Plaintiff North Star Hotels Corporation (North Star) is a Texas corporation engaged in the management and operation of several hotels and inns throughout the United States. Defendant Mid–City Hotel Associates (Mid–City) is a Minnesota limited partnership which owns the Hilton Hotel located at 1330 Industrial Boulevard, Minneapolis, Minnesota (hereinafter referred to as "the Hotel"). On or about September 11, 1978, Mid–City and North Star entered into a management agreement for the Hotel. Pursuant to the terms of the management agreement, North Star was granted "the sole and exclusive right to supervise and direct the management and operation of the Hotel." Under the management agreement, North Star was required to render technical assistance to Mid–City regarding pre-opening planning and construction of the Hotel and was to perform management duties including:

(a) hiring, promoting, discharging and supervising all employees of the Hotel;

(b) contracting for all utilities, maintenance and other services which North Star deemed necessary for the proper operation and maintenance of the Hotel;

(c) making all repairs and improvements to the Hotel as were necessary for its proper maintenance;

(d) purchasing such supplies as North Star deemed necessary or advisable for the operation of the Hotel;

(e) applying for, obtaining and maintaining all licenses and permits required of the owner (Mid–City) or manager (North Star) in connection with the operation and management of the Hotel;

(f) establishing and maintaining bank accounts for the Hotel, collecting and depositing in such accounts all monies received from the operation of the Hotel, and making all expenditures from such accounts as were required in connection with the ownership, maintenance and operation of the Hotel; and

(g) doing or causing to be done all acts and things in and about the Hotel as were necessary to comply with all legal and insurance requirements.

*See* Management Agreement par. 4.01–4.05, 6.01–6.07.

At the time the parties entered into the management agreement, they also executed a management fee rider which set forth the compensation to be received by North Star for its services. The management fee rider provided that North Star would be compensated based on the Hotel's gross revenues or gross operating profits, with North Star receiving the greater of a defined percentage of gross revenues or a floating percentage of gross operating profit. From 1978 through December 2, 1987, North Star acted as manager of the Hotel and was compensated according to the parties' agreement.

Plaintiff alleges that as early as November 1984 Dr. Harry A. Johnson, Jr., one of Mid–City's general partners, expressed a desire to buy out North Star's interest in the management agreement. Plaintiff alleges that Johnson wished to sell the Hotel and considered the management agreement to be an impediment to such a sale.[1] Throughout 1985, 1986 and early 1987 the parties conducted intermittent negotiations regarding a possible buy-out by Mid–City.

---

1. Paragraph 8.04 of the management agreement provides in part that

Should Owner sell, lease or otherwise transfer or assign its ownership interest in the Hotel or its interest in this Agreement within fifteen (15) years of the opening of the Hotel, such sale, lease or transfer of the Owner's interest will be subject to this Management Agreement and the Management Fee Rider and all of the terms and provisions thereof. Unless otherwise agreed to by Manager, any successor in interest to Owner will be bound by the terms and provisions of this Agreement until the expiration of the fifteen (15) year period.

The parties could not, however, reach an agreement.

By letter dated June 19, 1987, Mid–City notified North Star of what it viewed to be certain acts and omissions on the part of North Star which allegedly constituted a default under paragraph 7.01 of the management agreement.[2] Under the management agreement, if a default continued for a period of sixty days after notice, Mid–City had the right to terminate the agreement upon ninety days' written notice. By letter dated September 3, 1987, Mid–City notified North Star that the management agreement would terminate upon expiration of ninety days.

On September 4, 1987, North Star commenced this action, alleging that Mid–City's actions were wrongful and constituted a breach of contract. In its complaint North Star seeks damages for the alleged breach of contract and for injury North Star allegedly suffered to its business reputation and goodwill. North Star further seeks a judgment declaring that North Star fully performed its duties under the management agreement and is not in default and finding that Mid–City was not entitled to terminate the agreement. On October 14, 1987 Mid–City answered North Star's complaint and filed a counterclaim alleging breach of contract and negligence and seeking ejectment

of North Star from the Hotel. On December 3, 1987, upon expiration of the ninety-day period referred to in the letter of September 3, 1987, the management agreement was terminated and Mid–City took over management of the Hotel from North Star.

Mid–City now moves the Court to dismiss North Star's complaint or in the alternative for summary judgment. In addition, Mid–City requests an award of attorneys' fees incurred as a result of this litigation. Mid–City argues that because North Star is not a licensed real estate broker, North Star is precluded under Minn.Stat. § 82.33, subd. 1 from bringing an action to collect a fee for managing an interest in real estate. Mid–City further contends that North Star may not maintain an action for breach of the management agreement because the agreement is unenforceable as an illegal contract due to North Star's failure to obtain proper licensure. Mid–City thus argues that North Star's complaint must be dismissed or in the alternative that summary judgment should be entered against North Star. Pursuant to Fed.R.Civ.P. 12(b), because matters outside the pleadings have been presented to and not excluded by the Court, Mid–City's motion will be treated as one for summary judgment and will be disposed of pursuant to Fed.R.Civ.P. 56.

**2.** Paragraph 7.01 of the management agreement states that North Star shall be considered in default:

(a) If Manager shall fail to keep, observe or perform any material covenant, agreement, term or provision of this Agreement to be kept, observed or performed by Manager, and such default shall continue for a period of sixty (60) days after notice thereof by Owner to Manager;

(b) If Manager shall apply for or consent to the appointment of a receiver, trustee or liquidator of Manager or of all or a substantial part of its assets, file a voluntary petition in bankruptcy, or admit in writing its inability to pay its debts as they come due, make a general assignment for the benefit of creditors, file a petition or an answer seeking reorganization or arrangement with creditors or to take advantage of any insolvency law, or file an answer admitting the material allegations of a petition filed against Manager in any bankruptcy, reorganization or insolvency proceeding, or if an order, judgment or decree shall be entered by any court of competent jurisdic-

tion, on the application of a creditor, adjudicating Manager a bankrupt or insolvent or approving a petition seeking reorganization of Manager or appointing a receiver, trustee or liquidator of Manager or of all or a substantial part of its assets, and such order, judgment or decree shall continue unstayed and in effect for any period of sixty (60) consecutive days;

(c) If Manager, during the term of this Agreement, fails to perform in accordance with the minimum performance standards recited in the Management Fee Rider attached hereto and made a part hereof;

(d) Upon the death, disability, insanity, or retirement of James M. Grisebaum;

(e) If James M. Grisebaum should hold less than Fifty–One Per Cent (51%) ownership of Manager (managing entity); or,

(f) If Manager, by its actions, causes the Hilton License Agreement to be terminated, or if Manager repeatedly and materially violates the terms and provisions of the Hilton License Agreement[.]

Jurisdiction is proper under 28 U.S.C. § 1332.

## DISCUSSION

A movant is not entitled to summary judgment unless the movant can show that no genuine issue exists as to any material fact. Fed.R.Civ.P. 56(c). In considering a summary judgment motion, a court must determine whether there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The role of a court is not to weigh the evidence but instead to determine whether, as a matter of law, a genuine factual conflict exists. *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir.1987). In making this determination, the Court is required to view the evidence in the light most favorable to the nonmoving party and to give that party the benefit of all reasonable inferences that can be drawn from the facts. *AgriStor Leasing*, 826 F.2d at 734. When a motion for summary judgment is properly made and supported with affidavits or other evidence as provided in Fed.R.Civ.P. 56(c), then the nonmoving party may not merely rest upon the allegations or denials of the party's pleading, but must set forth specific facts, by affidavits or otherwise, showing that there is a genuine issue for trial. *Lomar Wholesale Grocery, Inc. v. Dieter's Gourmet Foods, Inc.*, 824 F.2d 582, 585 (8th Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 707, 98 L.Ed.2d 658 (1988). Moreover, summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

In Minnesota, "[n]o person shall act as a real estate broker ... unless licensed...." Minn.Stat. § 82.19, subd. 1. Moreover, Minn.Stat. § 82.33, subd. 1 provides:

No person shall bring or maintain any action in the courts of this state for the collection of compensation for the performance of any of the acts for which a license is required under this chapter without alleging and proving that the person was a duly licensed real estate broker or salesperson at the time the alleged cause of action arose.

The term "real estate broker" is defined in Minn.Stat. § 82.17, subd. 4(a) as any person who

for another and for commission, fee or other valuable consideration or with the intention or expectation of receiving the same directly or indirectly lists, sells, exchanges, buys or rents, manages, or offers or attempts to negotiate a sale, option, exchange, purchase or rental of an interest or estate in real estate, or advertises or holds out as engaged in these activities....

In the case at bar, defendant Mid–City contends that North Star is engaged in the management of an interest in real estate for a fee and as such is acting as a real estate broker subject to the license requirement of Minn.Stat. § 82.19, subd. 1. Mid–City asserts that North Star has failed to plead or prove its compliance with this licensing statute. Mid–City thus argues that North Star is precluded as a matter of law from bringing an action to collect its management fee and further contends that North Star may not maintain an action based on the management contract as that contract is illegal due to North Star's failure to obtain the required broker's license.

North Star concedes that it has failed to plead or prove its compliance with Minn. Stat. § 82.19, subd. 1. North Star argues, however, that it is not a real estate broker within the meaning of Minn.Stat. § 82.17, subd. 4(a). North Star thus contends that summary judgment is inappropriate and that its claims should be allowed to proceed.

The Court finds that North Star is not a real estate broker within the meaning of Minn.Stat. § 82.17, subd. 4(a). Even a facial reading of Minn.Stat. § 82.17, subd. 4(a) suggests that it is intended to cover persons engaged in traditional real estate brokerage activities. The statute is all-in-

clusive, yet such completeness does not indicate that it is intended to cover managers of businesses only tangentially related to real estate. North Star correctly asserts that Mid–City's argument, taken to its logical conclusion would require managers from a host of nonreal estate businesses to obtain a broker's license. In the judgment of this Court, such a result is clearly beyond the Legislature's intent.

Mid–City cites four cases in support of its argument: *Albers v. Fitschen,* 274 Minn. 375, 143 N.W.2d 841 (1966); *Relocation Realty Services Corp. v. Carlson Companies, Inc.,* 264 N.W.2d 643 (Minn. 1978); *Gahagan v. Patterson,* 316 F.Supp. 1099 (D.Minn.1970); and *Dellwood Enterprises, Inc. v. Pacific American Real Estate Fund,* 505 F.Supp. 187 (D.Minn.), *aff'd,* 653 F.2d 350 (8th Cir.1981). None of these cases holds that managers of hotels or other similar businesses are required to obtain a real estate broker's license. Moreover, none of these cases construes the definitional limits of the term "real estate broker" for purposes of the licensing statute. All the cases cited by Mid–City deal specifically with services rendered in connection with the sale of real estate and none of the cases discusses "managers" of "interests in real estate." [3] While it is true that the cases broadly interpret the licensing statute to accomplish its remedial effect, *see, e.g., Relocation Realty Services,* 264 N.W.2d at 645 (recognizing legislative purpose of protecting public against unqualified brokers), no court has used such a broad interpretation to hold liable parties not acting within the real estate industry. In short, Mid–City's reliance on the cases cited is misplaced and its argument unpersuasive.

Exclusion of hotel managers from the class of persons required to obtain real estate broker's licenses is supported by an analysis of the Minnesota Supreme Court's decision in *State v. Beslanowitch,* 311 Minn. 56, 248 N.W.2d 286 (1976). In *Beslanowitch,* the Minnesota Attorney General sought to enjoin the business activities of

defendant for failure to obtain a broker's license. Defendant operated a business called Rental Directory, which collected information on residential real estate vacancies and sold the information to potential tenants for a fee. In reaching its decision, the court narrowly construed the definition of real estate broker found in Minn.Stat. § 82.17, subd. 4(a). Specifically, the court held that the term "lists" in section 82.17, subd. 4(a) should not be interpreted expansively to apply to one who merely sold rental information. Similarly, in the case at bar, the Court will not interpret the word "manages" expansively to include hotel managers.

Even the dissent in *Beslanowitch,* which argued for a broad interpretation of the broker licensing requirement, supports the exclusion of hotel managers from the statute's coverage. *Beslanowitch,* 248 N.W.2d 286, 290 (MacLaughlin, J., dissenting). The dissent stated that "the legislature intended the term 'broker' to include anyone who is primarily engaged in the business of bringing together either a prospective real estate buyer and seller or a prospective tenant and landlord." *Id.* (footnote omitted). The dissent argued that the defendant before it was primarily engaged in the real estate business and thus should be subject to licensing requirements. However, the dissent went on to distinguish the case before it from that of a newspaper listing real estate advertisements. The dissent stated that "[t]he real estate broker statute is aimed at regulating those who are engaged in the *business* of brokering" and determined that a newspaper was only incidentally related to the brokering business. *Id.* 248 N.W.2d at 290 n. 1. Similarly, a hotel manager is only tangentially involved, if at all, in the business of brokering and thus should not be subject to the broker licensing requirement. One could argue that a hotel manager acts as a broker when arranging room rentals. It is clear from *Beslanowitch,* however, that the licensing statute is intended to cover only

---

**3.** In fact, both *Albers* and *Gahagan* predate the 1973 amendment to Minn.Stat. § 82.17, subd. 4(a) which added the word "manages" to the definition of real estate broker. *See* Minn.Stat. § 82.01, subd. 4 (1971).

those involved in traditional areas of the real estate industry.

North Star presents several additional persuasive arguments which demonstrate that hotel managers should not be subject to the broker licensing requirements. First, North Star cites relevant legislative history indicating that the addition of the word "manages" to the definition of real estate broker was not intended to broaden the scope of the law beyond the traditional real estate industry. *See* Hearing Before the Senate Subcommittee on State Boards and Commissions on March 26, 1973 Relating to Senate File 759 (testimony of Edward Driscoll, Commissioner of Securities, Department of Commerce). Further, North Star notes that hotels are pervasively regulated under specific provisions which preclude the need for a general licensing requirement. Finally, North Star asserts that as a practical matter, managing a hotel is fundamentally different from acting as a real estate broker and as such it would be inappropriate to treat hotel managers as brokers for licensing purposes. The Court finds that these arguments, along with the obvious intent of the broker licensing statute and the teachings of case law, conclusively demonstrate that hotel managers in general and North Star in particular are not required to obtain real estate broker's licenses under Minn.Stat. § 82.19, subd. 1. Given the above analysis, the parties' management agreement is not an invalid contract and may serve as the basis of the instant action.

Because the Court finds that plaintiff's action is proper, no basis exists for an award of attorneys' fees and accordingly defendant's motion for fees will be denied.

Based on the foregoing, and on all the files, records, proceedings and arguments of counsel,

IT IS ORDERED that defendant's motion to dismiss or for summary judgment and for attorneys fees is denied.