**UNITED HOME RENTALS, INC.,**
**Michael A. Livingston, and W.**
**Eugene Bushman**

v.

**TEXAS REAL ESTATE COMMISSION**
**and the State of Texas.**

CA 3–81–0809–C.

United States District Court,
N. D. Texas,
Dallas Division.

Sept. 29, 1982.

Steve Brutsche, Weil, Brutsche & Clements, Dallas, Tex., for plaintiffs.

Nancy N. Lynch, Asst. Atty. Gen., Austin, Tex., for Texas Real Estate Com'n.

Mark White, Atty. Gen. of Tex., John W. Fainter, Jr., First Asst. Atty. Gen., Richard E. Gray, III, Executive Asst. Atty. Gen., Paul R. Gavia, Nancy N. Lynch, Asst. Attys. Gen., Austin, Tex., for the State of Tex.

## OPINION

WILLIAM M. TAYLOR, Jr., District Judge.

■ This is a suit under 42 U.S.C. § 1983[1] and 28 U.S.C. § 1331.[2] Plaintiffs complain that Defendants have violated their First Amendment Rights which have been made applicable to the States by the Fourteenth Amendment.[3]

---

**1.** 42 U.S.C. § 1983 reads:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

**2.** 28 U.S.C. § 1331 reads:

The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

**3.** The First Amendment to the Constitution specifies:

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

and the Fourteenth Amendment, Section 1, specifies:

All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

The Parties in their Joint Motion for Pretrial Order entered into stipulations A through L as follows:

A. Plaintiffs own and operate and/or are employed in the rental information service industry in several locations throughout the State of Texas. The focus of the business is the compiling, cataloging, and sale of information about available rental property. This information is then made available to segments of the general public who choose to purchase a "policy" or "membership" for a specified fee which enables the customer to examine the catalogued information for a certain period of time, usually six months.

B. It is the intent of Plaintiffs that employees of the rental information service in each office perform one or more of the following functions:

(1) gathering rental information from landlords, classified ads, and other sources;

(2) certifying the accuracy of the information on catalogued property, and its continued availability for rental, on a periodic basis;

(3) handling incoming telephone calls to the office either in response to ads or to give information to existing policyholders as to newly catalogued rental properties;

(4) the explanation of services offered and the sale of policies to customers who come into the office.

One or more functions may be performed by the same or multiple employees within each office.

C. Plaintiff Livingston is the sole shareholder and sole director of United Home Rentals, Inc. Plaintiff Bushman is a real estate broker employed full time by Plaintiff United Home Rentals, Inc., but has no ownership interest in the company. Plaintiff Bushman currently holds a brokers license issued by Defendant TREC and Plaintiff Livingston, through the sponsorship of Plaintiff Bushman, is the holder of a salesman's license issued by TREC.

D. According to interpretations by Defendant TREC and its counsel, its Rules (Appendix 2) require that any employee that performs on any occasion any of the functions specified aforesaid in Paragraph VB be licensed as a salesman or broker under the provisions of the Real Estate License Act and the rules promulgated thereunder.

E. The Commission is currently demanding that such functions be performed only by licensed people or that Plaintiff United Home Rentals cease doing business. Defendant TREC has threatened (and in fact subsequent to the filing of suit, instituted) administrative proceedings against Plaintiffs Livingston and Bushman to revoke their licenses based upon their association with persons performing such functions who do not have licenses issued by Defendant TREC.

F. The minimal educational requirements for obtaining a real estate salesman's license since 1976 and as changed by the 1981 amendment to the law are as follows:

(1) January 1, 1976—30 classroom hours (plus 30 additional hours each for second and third annual certification);

(2) January 1, 1977—6 semester hours (90 classroom hours);

(3) January 1, 1979—12 semester hours (180 classroom hours);

(4) January 1, 1981—21 semester hours (315 classroom hours);

(5) April 23, 1981—12 semester hours with 6 hours in core real estate courses including 2 hours in Principles of Real Estate (plus additional semester hours for second, third and fourth annual certifications).

G. On April 23, 1980, Defendant TREC rejected license applications by three employees of Plaintiff United Home Rentals, Inc. on the basis they misrepresented their activities either past or future in their application for licensure to Defendant TREC. Specifically, the application requires them to affirm under oath that they have not performed activities requiring licensure and that they will not

perform activities requiring licensure until the license is actually issued. Defendant TREC denied the applications on the basis that in working for Plaintiff United Home Rentals, Inc. each employee, necessarily and admittedly, performed one or more of the functions specified in paragraph VB, of the Rules (Appendix 2) without the benefit of a license from Defendant TREC. Accordingly, Defendant TREC has denied the applications on the basis that "the Texas Real Estate Commission is not satisfied that (employee) would conduct his real estate business with honesty, trustworthiness and integrity as required by . . . (the act)".

H. Defendant TREC has informed Plaintiffs that the act provides for and in fact has commenced administrative actions to revoke the licenses of Plaintiffs Bushman and Livingston (such commencement occurring April 24, 1980) on the basis that they have "associated with unlicensed persons".

I. Defendant TREC has informed Plaintiffs that the act provides for criminal prosecution of employees of Plaintiff United Home Rentals, Inc. not holding real estate licenses and performing any of the functions specified in paragraph VB of the Rules.

J. Defendant TREC has advised Plaintiff's counsel that it intends to immediately and vigorously prosecute enforcement proceedings pursuant to its authority as to Michael Livingston, Wesley Eugene Bushman, and United Home Rentals, Inc.'s employees, James Godfrey, Gerald Sheridan, and Kenneth Crain.

K. Companies in the rental information industries have been the subject of consumer complaints such as:

(a) not having the permission of the landlord to catalog property;

(b) cataloging property no longer available for rent;

(c) advertising property that did not really exist or that was no longer available;

(d) guaranteeing the results of a service and then not honoring such guarantees;

(e) promising the availability of property meeting the needs of a particular customer and then not having any such property.

L. Plaintiff United Home Rentals, Inc. has been the subject of such consumer complaints but has been responsive to resolving such consumer complaints. In 1976, Plaintiff United consented to an injunction against certain of such acts without admitting it had performed them. Mark McQuality and Joseph Chumlea, former Assistant Attorney Generals to the State of Texas—Consumer Division would testify that from October, 1976, to June, 1980, they processed approximately 37 complaints involving United Home Rentals, Inc. in the Dallas-Fort Worth area, and that said attorneys cannot recall any of those complaints that were not resolved to the satisfaction of the consumer. Said attorneys' personal knowledge is limited to the period commencing October, 1977. In April, 1980, Joseph Chumlea suggested that Plaintiff United put a catalog reference in its advertising referring to the specific piece of rental property being advertised so that consumers could verify that a property advertised was in fact listed by United. United Home Rentals immediately and voluntarily complied with that suggestion.

After trial, in response to a query by the Court concerning case or controversy under Article III, Section 2 of the Constitution [4],

---

4. Art. III, Sec. 2, reads:

The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority;—to all Cases affecting Ambassadors, other public Ministers and Consuls;—to all Cases of admiralty and maritime Jurisdiction;—to Controversies to which the United States shall be a Party;—to Controversies between two or more States;—between a State and Citizens of another State; —between Citizens of different States;—between Citizens of the same State claiming Lands under Grants of different States, and

and abstention in the light of *Gibson v. Berryhill,* 411 U.S. 564, 574, 93 S.Ct. 1689, 1695, 36 L.Ed.2d 488, the Parties entered into further stipulations. Stipulations numbered two through seven of this series are pertinent and recite:

2. *State action has occurred.*

Defendant TREC has rejected license applications by three employees of Plaintiff United Home Rentals, Inc., and has commenced administrative action to revoke the licenses of Plaintiffs Bushman and Livingston. While these actions by TREC can be appealed, they are final if no affirmative action is taken by the affected parties.

3. *Statute violated.*

Plaintiff United Home Rentals, Inc., Michael A. Livingston, and W. Eugene Bushman, have performed acts requiring licensure under the Texas Real Estate License Act and the rules and regulations promulgated thereunder. The acts performed to provide an advance fee rentals information service such as that provided by Plaintiffs are brokering activities as defined by the Act and require a real estate license under the Texas Real Estate License Act. United Home Rentals employees have performed such actions without licensure in violation of said Act.

4. *No ambiguity in statute.*

Provisions of the Texas Real Estate License Act, art. 6573a, V.A.C.S., and the rules and regulations promulgated thereunder, are not ambiguous and clearly cover the actions of Plaintiffs and their employees. The statute is not fairly susceptible to a reading that would avoid the need to decide the Constitutional issue.

5. *Only issue is Federal Constitutional issue.*

The only disputed fact issues before the Court are: (1) Whether the definition of real estate broker and licensure requirements of the Texas Real Estate License Act are so broad as to violate Plaintiffs' Constitutional protection of free commercial speech and press when applied to Plaintiffs' activities as advance fee rentals agent; (2) whether said requirements bear a rational relationship to the governmental purpose for such licensure when applied to Plaintiffs' activities; (3) whether the rules and regulations regarding said requirements for activities performed by Plaintiffs are so overly broad as to violate the constitutional protection of free commercial speech and press when applied to Plaintiffs' activities as advance fee rental agents; and (4) whether the statute and regulations in fact impact Constitutionally protected rights of speech and/or press or just impact regulatable activities.

6. *Waiver.*

Defendants TREC and The State of Texas waive their right to assert or demand abstention by the Court in this cause.

7. *Prescribed state administrative procedures have been complied with in such a way that no other administrative remedies are applicable to this cause.*

To the extent any available administrative remedies can be pursued by Plaintiffs, Defendants waive any further application of the doctrine of exhaustion of administrative remedies.

It does appear that the Parties have presented a live controversy to this Court and have settled any questions of abstention.

The paramount question in this case is whether the State of Texas can subject Plaintiffs to licensure under the Texas Real Estate License Act, Art. 6573a, Vernon's

between a State, or the Citizens thereof, and foreign States, Citizens or Subjects.

In all Cases affecting Ambassadors, other public Ministers and Consuls, and those in which a State shall be a Party, the supreme Court shall have original Jurisdiction. In all other Cases before mentioned, the supreme Court shall have appellate Jurisdiction, both as to Law and Fact, with such Exceptions, and under such Regulations as the Congress shall make.

The trial of all Crimes, except in Cases of Impeachment, shall be by Jury; and such Trial shall be held in the State where the said Crimes shall have been committed; but when not committed within any State, the Trial shall be at such Place or Places as the Congress may by Law have directed.

Ann.Civ.St. Plaintiffs say no because to do so would trample their rights of free commercial speech and press.

■ As this is a commercial speech case, it is governed by the Supreme Court's decision in *Central Hudson Gas v. Public Service Commission,* 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980).

The Court set out a four part test in that case. Those components are:

(1) Is the speech protected by the First Amendment?

(2) Is the governmental interest asserted substantial?

(3) Does the regulation directly advance the governmental interest asserted?, and

(4) Is the regulation more extensive than is necessary to serve that interest?

■ To answer the first question, it must first be decided just who is speaking? In this instance, it is the apartment, duplex and home renters who are seeking to disseminate information about rental properties. Most assuredly, this is the sort of information that is protected by the First Amendment.

■ In being a means of disseminating this information, Plaintiff United Homes Rental is fulfilling the same function as a newspaper which carries classified advertising.

Just as newspapers seek listings in their classified sections for rental properties, so do Plaintiffs seek listings for rental properties. Newspapers, after they receive a listing, then seek to disseminate this information to a group limited only by the individual's willingness to purchase a subscription or an individual edition of that paper. Plaintiffs, functionally, do the same. They seek to disseminate the same information to a group limited only by the individual's willingness to purchase a "policy" or "membership" for a stated time period. That Plaintiffs choose to receive compensation for their services from only those seeking housing and not those offering housing is a distinction without a difference.

The Supreme Court in the case of *Lovell v. Griffin,* 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949 (1937) said at page 452, 58 S.Ct. at page 669: "The press in its historic connotation comprehends every sort of publication which affords a vehicle of information and opinion." The Court also said in *Ex parte Jackson,* 96 U.S. 727, at 733, 24 L.Ed. 877: "Liberty of circulating is as essential to that freedom as liberty of publishing; indeed, without the circulation, the publication would be of little value."

The best statement by The State of Texas as to the interest asserted may be found at page one of its trial brief. There, it has stated: "... the challenged statute does not restrict speech in any way. Rather, it restricts the profession of real estate brokering to licensed individuals."

■ The legal counsel for the Texas Real Estate Commission stated at trial that the purpose of licensure of these individuals is consumer protection.[5] The consumer is protected in that an applicant for a license under the Texas Real Estate License Act ("the Act") must, as required by Sec. 6(b) of that act, show "his honesty, trustworthiness, integrity, and competency." Surely, The State of Texas does have a substantial interest in thusly protecting its citizens in such a vital commerce as the market for housing, one of the fundamental needs of its citizens.

The Texas Real Estate License Act does directly advance the interest asserted. Section 6 in paragraphs (b) & (c) specifies that the competency of an applicant "shall be judged solely on the basis of the examination referred to in Section 7 of this Act." Section 7(a) sets out nine "core real estate courses" that an applicant must have studied before he or she may take an examination for a real estate license. Those courses are listed and described as:

(1) Principles of Real Estate (or equivalent) shall include but not be limited to an overview of licensing as a real estate broker and salesman, ethics of practice,

---

**5.** Transcript of the Preliminary Injunction hearing, p. 62.

titles to and conveyancing of real estate, legal descriptions, law of agency, deeds, encumbrances and liens, distinctions between personal and real property, contracts, appraisal, finance and regulations, closing procedures, and real estate mathematics.

(2) Real Estate Appraisal (or equivalent) shall include but not be limited to the central purposes and functions of an appraisal, social and economic determinant of value, appraisal case studies, cost, market data and income approaches to value estimates, final correlations, and reporting.

(3) Real Estate Law (or equivalent) shall include but not be limited to legal concepts of real estate, land description, real property rights and estates in land, contracts, conveyances, encumbrances, foreclosures, recording procedures, and evidence of titles.

(4) Real Estate Finance (or equivalent) shall include but not be limited to monetary systems, primary and secondary money markets, sources of mortgage loans, federal government programs, loan applications, processes and procedures, closing costs, alternative financial instruments, equal credit opportunity acts, community reinvestment act, and state housing agency.

(5) Real Estate Marketing (or equivalent) shall include but not be limited to real estate professionalism and ethics, characteristics of successful salesmen, time management, psychology of marketing, listing procedures, advertising, negotiating and closing, financing, and the Deceptive Trade Practices-Consumer Protection Act, as amended, Section 17.01 et seq., Business & Commerce Code.

(6) Real Estate Mathematics (or equivalent) shall include but not be limited to basic arithmetic skills and review of mathematical logic, percentages, interest, time-valued money, depreciation, amortization, proration, and estimation of closing statements.

(7) Real Estate Brokerage (or equivalent) shall include but not be limited to law of agency, planning and organization, operational policies and procedures, recruiting, selection and training of personnel, records and control, and real estate firm analysis and expansion criteria.

(8) Property Management (or equivalent) shall include but not be limited to role of property manager, landlord policies, operational guidelines, leases, lease negotiations, tenant relations, maintenance, reports, habitability laws, and the Fair Housing Act.

(9) Real Estate Investments (or equivalent) shall include but not be limited to real estate investment characteristics, techniques of investment analysis, time-valued money, discounted and nondiscounted investment criteria, leverage, tax shelters depreciation, and applications to property tax.

Section 7 in paragraph (k) also requires all applicants to have taken further coursework as follows:

(k) All applicants for licensure must complete at least three classroom hours of coursework on federal, state, and local laws governing housing discrimination, housing credit discrimination, and community reinvestment or at least three semester hours of coursework on constitutional law.

The mere reading of these coursework requirements brings home the desirability of ensuring the competence of the real estate profession. It is more than reasonable for The State of Texas to require real estate professionals to be licensed so that the public can be assured that the members of that profession are well versed in these complicated subject areas. Thus, on its face, the Act directly advances the governmental interest that has been asserted as its reason for existence.

The fourth part of the test required by the Supreme Court in *Central Hudson Gas*, supra, is whether or not the regulation is more extensive than necessary to serve the State's interest? In this instance before the Court, Plaintiffs are not challenging the statute on its face but are challenging the gloss put on it by the Texas Real Estate Commission.

As part of Plaintiffs' Exhibit No. 11, a letter dated October 18, 1978, written by the Legal Counsel to the Texas Real Estate Commission sets out the following rules of the Commission as governing the requirement for licensure of persons in Plaintiffs' field of endeavor:

Rule 402.03.02

.003.4 Real estate broker licensure is required for the operation of a rental agency. This section does not prohibit employment of an answering service which is identified to callers as such and which provides information concerning the size, price and terms of property advertised.

.005.1 Locating and bringing together a buyer and seller through correspondence or telephone constitutes negotiation if done from within the borders of Texas.

.005.5 Real estate licensure is required of rental agents doing all solicitation by telephone unless such agents are employees of the owner of the property concerned.

.005.6 A clerical employee of a real estate broker is not required to be licensed if such employee engages in no solicitation work and does not hold himself or herself out as authorized to act as a real estate agent.

.005.7 Answering of the telephone and acts of a secretarial nature done in a broker's office do not require real estate licensure.

.010.1 (a) Real estate licensure is required for the operation of an apartment selector/locator service or home-finding service in Texas.

.010.2 (b) The compilation and sale of listings of rental vacancies available in an area is activity requiring real estate licensure. This is true even if the property is not shown, sold, leased or managed.

.011.1 This section prohibits a person not licensed as a Texas real estate broker or salesman from receiving a referral fee from another concerning the sale, exchange, purchase, rental or lease of real estate.

.011.2 Real estate licensure is required for one to procure or assist in the procuring of prospective tenants of real property for compensation in any form, including but not limited to rent bonuses, discounts, gifts or other things of value.

.011.3 The referral of a prospective purchaser, for compensation, is an act requiring real estate licensure.

.013.1 Real estate licensure is required of those who advertise for others regarding real property, accept calls received in response to such advertisements, and refer the callers to the owner of the property.

On the face, it would appear that these rules are reasonable and would legitimately cover the activities of the Plaintiffs. They plausibly encompass activities which fall within the sweep of Section 2(2) of the Act defining just who is a real estate broker. That Subsection reads:

"Real estate broker" means a person who, for another person and for a fee, commission, or other valuable consideration, or with the intention or in the expectation or on the promise of receiving or collecting a fee, commission, or other valuable consideration from another person:

(A) sells, exchanges, purchases, rents, or leases real estate;

(B) offers to sell, exchange, purchase, rent, or lease real estate;

(C) negotiates or attempts to negotiate the listing, sale, exchange, purchase, rental, or leasing of real estate;

(D) lists or offers or attempts or agrees to list real estate for sale, rental, lease, exchange, or trade;

(E) appraises or offers or attempts or agrees to appraise real estate;

(F) auctions, or offers or attempts or agrees to auction, real estate;

(G) buys or sells or offers to buy or sell, or otherwise deals in options on real estate;

(H) aids, attempts, or offers to aid in locating or obtaining for purchase, rent, or lease any real estate;

(I) procures or assists in the procuring of prospects for the purpose of effecting the sale, exchange, lease or rental of real estate; or

(J) procures or assists in the procuring of properties for the purpose of effecting the sale, exchange, lease, or rental of real estate.

So on its face, the Act and the Texas Real Estate Commission Rules promulgated under it, appear to meet Constitutional muster. But let us look at prongs two, three and four of the *Central Hudson Gas,* supra, test in the context of the situation presently before this Court.

First of all, it is useful to distinguish between the business of Plaintiffs and that of apartment locator services. The latter sell their services to landlords and are compensated for each tenant procured by the apartment locator services. These services are usually licensed under the Act. The locator services also take prospective tenants around to various rental properties and show the properties to them. Licensure would appear to be appropriate as these services are really acting as agents for the landlord in procuring tenants.

But Plaintiffs' business is different. They do not receive compensation on the closing of a real estate sale or upon the signing of a lease agreement. They receive their compensation at the beginning, in advance of the furnishing of any information to a prospective tenant. Plaintiffs also either allow their customers to read the information about listings off of cards maintained in their offices or read the information to their customers over the phone, for a slight additional fee. Plaintiffs do not counsel their customers as to suitable properties nor do they show rental properties to their customers. One might say that locator services are selling to landlords the service of procuring tenants and Plaintiffs are selling prospective tenants the service of providing information about dwellings open for rent.

Clearly, there is a meaningful distinction between these two businesses. The services performed by apartment locator services are much greater and of a different quality from those performed by Plaintiffs.

It can readily be seen that apartment locator service employees should be licensed to ensure that they are versed with the coursework required in order to obtain a license under the Act. Their livelihood depends on their ability to determine the needs of prospective tenants and to persuade the prospective tenants to lease dwellings shown by them. Another reading of the coursework requirements of the Act, supra, in and of itself, shows the desirability of a locator service having knowledge of at least some of this coursework. Surely, such an employee would need knowledge of lease contracts and their legal effects, real estate marketing and property management in order to do their job.

This is in great contrast to Plaintiffs' business. The stipulations entered into by the Parties, the text of the Act and the testimony at the Preliminary Injunction hearing show only that it might be helpful for an employee in the rental service information industry to be familiar with some of the terminology of the real estate business. It is, no doubt, helpful for any person who deals with information related to any field of endeavor to be conversant with the terminology used in that field. This reed is too slender to carry the weight of the licensing requirements of the Act.

Both Plaintiffs and Defendants appear to agree that the ills of the rental information service industry are covered by the Texas Deceptive Trade Practices-Consumer Protection Act, V.T.C.A. Bus. & C. § 17.41 et seq. Both Parties also agree that Plaintiffs did have some problems with consumer complaints when they started in business (see stipulation L, supra) but that there have been no unresolved problems since 1976.

It is true that the coursework requirements of the Act do require a familiarity with the D.T.P.–C.P.A. But this is an act of general applicability. Any person who is dealing with the public in the State of Texas should be familiar with the con-

sumer protection statutes, state and federal, that are applicable.

The Legal Counsel to Defendants did testify that numerous complaints had been made to the Attorney General of the State of Texas and to Defendants about firms in the rental information service industry. He also stressed that it is the position of Defendants that it is better to regulate this industry in advance than to merely provide a remedy after malfeasance, misfeasance or nonfeasance.

The Court will agree that usually this is a decision that a state can make without running afoul of the Constitution. But we are dealing with the First Amendment made applicable to the States by the Fourteenth Amendment.

The whole question before this Court may be boiled down to asking whether Plaintiffs are in the real estate business or in the information business? It seems clear that Plaintiffs offer only an exchange of information for a set fee. They or their employees do not counsel either landlords or tenants. They do not show properties. They get involved in neither lease negotiations nor contract legalities. They offer the same service that newspapers do, an exchange of information. They just do not appear to be in the real estate business any more than a newspaper that solicits classified advertisements listing homes for lease or sale is in the real estate business. Accord: *Real Estate Commission of Maryland v. Phares,* 268 Md. 344, 302 A.2d 1 (1973), *North Carolina Real Estate Licensing Board v. Aikens,* 31 N.C.App. 8, 228 S.E.2d 493 (1976).

■ If Plaintiffs were carrying on such activities as counseling prospective tenants, the substantial interest of the State of Texas in regulating the real estate business in Texas would come into play. This is also to say that the Texas Real Estate Commission's attempt to regulate Plaintiffs' business does not directly advance that substantial interest and the regulation is much more extensive than necessary.

■ That other persons or entities might run afoul of the Act by providing more than pure information is without moment. That Plaintiffs may have run afoul of the Texas Deceptive Trade Practices-Consumer Protection Act some years ago and other entities in the rental information industry may be presently afoul of that law is insufficient reason to bring Plaintiffs under the strictures of the Texas Real Estate License Act. Just as the coursework requirements of the Act have minimal relevance to Plaintiffs' business, the moral character of them and their employees is no more relevant than it is for anyone who deals with the public in any way. Plaintiffs and their employees are not fiduciaries to either prospective tenants or landlords; they never hold funds in escrow; they do not negotiate contracts involving the lease or sale of real estate nor do they ever have an interest in such contracts. They just do not hold positions of trust and confidence so that licensure would directly advance the substantial interest of the State of Texas in protecting its citizens from any unscrupulous dealings in real estate.

Judgment will be granted to Plaintiffs.