**UNITED HOME RENTALS, INC., Michael A. Livingston and W. Eugene Bushman, Plaintiffs-Appellees,**

v.

**TEXAS REAL ESTATE COMMISSION and The State of Texas, Defendants-Appellants.**

No. 82–1672.

United States Court of Appeals, Fifth Circuit.

Oct. 3, 1983.

Rehearing and Rehearing En Banc Denied Oct. 31, 1983.

Mark White, Atty. Gen., Nancy N. Lynch, George Warner, Asst. Attys. Gen., Austin, Tex., for defendants-appellants.

Rhodus, Jones & Brutsché, Steve Brutsché, Dallas, Tex., for plaintiffs-appellees.

Before GEE, GARZA and TATE, Circuit Judges.

GEE, Circuit Judge:

On this appeal we are asked to perform the initial review of a decision by the Texas Real Estate Commission that its rules, promulgated pursuant to the Texas Real Estate License Act,[1] require licensure of employees of a rental information service who telephone landlords to obtain rental information, or to verify the continued accuracy of rental listings, or who describe the services offered by the rental information agency to prospective subscribers. Appellees contend that this interpretation of the Act and regulations promulgated thereunder violate their rights of commercial speech guaranteed by the first amendment. For the reasons set out below, we conclude that the district court should have abstained from considering the constitutionality of the statute's interpretation by the state real estate licensing agency pending review of this administrative interpretation by the state agency or the state courts.

## I.

Appellee United Home Rentals (UHR) is a Texas corporation that owns and operates a real estate rental information service.[2] UHR places advertisements in newspapers indicating that real estate of a certain description is available for rent and listing the UHR office telephone number. Potential consumers may respond to the advertisement by calling UHR and requesting information about the property. The UHR employee who answers the telephone will inform the potential consumer that he must come to the office personally and purchase a "membership" or subscription to the service before any more information will be released. Payment of the membership fee entitles the customer to examine a catalogue of rental property information maintained by UHR which contains the names and addresses of owners or landlords.

According to the stipulated facts, UHR employees perform the following functions:

(1) Gathering rental information from landlords, classified ads, and other sources;

(2) Verifying the information on catalogued property and periodically checking its continued accuracy;

(3) Handling incoming telephone calls in response to ads or to give information regarding newly catalogued rental properties to subscribers;

(4) Explaining the information service and selling memberships to customers.

The same employee may perform one or more of these functions.

Approximately half of UHR's employees, primarily those in supervisory and counseling positions, are licensed under the Texas Real Estate License Act ("the Act"). Section 2 of the Act defines the activities requiring licensure:

(2) "Real estate broker" means a person who, for another person and for a fee, commission, or other valuable consideration, or with the intention or in the expectation or on the promise of receiving or collecting a fee, commission, or other

---

1. Tex.Rev.Civ.Stat.Ann. art. 6573a, (West Supp.1983).

2. Appellee Livingston, a licensed real estate salesman, is the sole shareholder and director of UHR. Appellee Bushman is a licensed real estate broker employed full time by UHR but has no ownership interest in the company.

valuable consideration from another person:

(A) sells, exchanges, purchases, rents, or leases real estate;

(B) offers to sell, exchange, purchase, rent, or lease real estate;

(C) negotiates or attempts to negotiate the listing, sale, exchange, purchase, rental, or leasing of real estate;

(D) lists or offers or attempts or agrees to list real estate for sale, rental, lease, exchange, or trade;

(E) appraises or offers or attempts or agrees to appraise real estate;

(F) auctions, or offers or attempts or agrees to auction, real estate;

(G) buys or sells or offers to buy or sell, or otherwise deals in options on real estate;

(H) aids, attempts, or offers to aid in locating or obtaining for purchase, rent, or lease any real estate;

(I) procures or assists in procuring of prospects for the purpose of effecting the sale, exchange, lease, or rental of real estate; or

(J) procures or assists in the procuring of properties for the purpose of effecting the sale, exchange, lease, or rental of real estate.

(3) "Broker" also includes a person employed by or on behalf of the owner or owners of lots or other parcels of real estate, at a salary, fee, commission, or any other valuable consideration, to sell the real estate or any part thereof, in lots or parcels or other disposition thereof. It also includes a person who engages in the business of charging an advance fee or contracting for collection of a fee in connection with a contract whereby he undertakes primarily to promote the sale of real estate either through its listing in a publication issued primarily for such purpose, or for referral of information concerning the real estate to brokers, or both.

(4) "Real estate salesman" means a person associated with a Texas licensed real estate broker for the purposes of performing acts or transactions comprehended by the definition of "real estate broker" as defined in this Act.

Tex.Rev.Civ.Stat.Ann. art. 6573a § 2 (West Supp.1983) (emphasis added).

Section 6 of the Act specifies the licensing requirements:

(b) To be eligible for a license, an individual must . . . satisfy the commission as to his honesty, trustworthiness, integrity, and competency. However, the competency of the individual, for the purpose of qualifying for the granting of licensure privileges, shall be judged solely on the basis of the examination referred to in Section 7 of this Act.

Tex.Rev.Civ.Stat.Ann. art. 6573a § 6 (West Supp.1983).

Section 7(a), Tex.Rev.Civ.Stat.Ann. art. 6573a § 7(a) (West Supp.1983), sets out nine "core real estate courses" that an applicant must have studied before he or she may take an examination for the real estate license. The core courses include subjects such as: principles of real estate, real estate appraisal, real estate law, real estate finance, real estate marketing, real estate mathematics, real estate brokerage, property management, and real estate investments.

Pursuant to the rulemaking power granted it in Section 2 of the Act, appellant Texas Real Estate Commission ("the Commission") has enacted the following relevant regulations:

Rule 402.03.02

.003.4 Real estate broker licensure is required for the operation of a rental agency. This section does not prohibit employment of an answering service which is identified to callers as such and which provides information concerning the size, price and terms of property advertised.

.005.1 Locating and bringing together a buyer and seller through correspondence or telephone constitutes negotiation if done from within the borders of Texas.

005.5 Real estate licensure is required of rental agents doing all solicitation by

telephone unless such agents are employees of the owner of the property concerned.

.005.6 A clerical employee of a real estate broker is not required to be licensed if such employee engages in no solicitation work and does not hold himself or herself out as authorized to act as a real estate agent.

.005.7 Answering of the telephone and acts of a secretarial nature done in a broker's office do not require real estate licensure.

.010.1 (a) Real estate licensure is required for the operation of an apartment selector/locator service or home-finding service in Texas.

.010.2 (b) The compilation and sale of listings of rental vacancies available in an area is activity requiring real estate licensure. This is true even if the property is not shown, sold, leased or managed.

.011.1 This section prohibits a person not licensed as a Texas real estate broker or salesman from receiving a referral fee from another concerning the sale, exchange, purchase, rental or lease of real estate.

.011.2 Real estate licensure is required for one to procure or assist in the procuring of prospective tenants of real property for compensation in any form, including but not limited to rent bonuses, discounts, gifts or other things of value.

.011.3 The referral of a prospective purchaser, for compensation, is an act requiring real estate licensure.

.013.1 Real estate licensure is required of those who advertise for others regarding real property, accept calls received in response to such advertisements, and refer the callers to the owner of the property.

The Commission has interpreted the Act and the regulations promulgated pursuant to it to require licensure of UHR employees performing the clerical tasks described above (i.e. gathering, verifying and distributing rental information). Accordingly, the Commission has commenced administrative proceedings to revoke the licenses of appellees Livingston and Bushman on the grounds that they had associated with unlicensed persons who had performed acts requiring a license.[3] Pursuit of these administrative actions has been deferred until the present litigation is resolved. Also, the Commission initially denied applications for licenses by three UHR employees on the ground that they misrepresented their activities as UHR employees in their applications.[4] However, during the pendency of this appeal, these licenses have in fact been issued.

In a previous federal action, UHR challenged the statute and regulations as applied on first amendment and equal protection grounds. Applying a due process analysis, the district court in that case ruled that the regulations did encompass UHR's activities, and that as applied to UHR, the regulations bore a rational relationship to the legitimate state goal of consumer protection. *United Home Rentals, Inc. v. Texas Real Estate Commission*, No. CA 3–80–0485–F (N.D.Tex. April 16, 1981) ("UHR I"). The court refused to consider UHR's first amendment argument.

UHR then refiled in the same federal district court,[5] mounting the same first amendment and equal protection attacks on the statute as applied. Without any reference to the earlier action, the district court below ruled that the statute and regulations encompassed UHR's activities, and

---

**3.** Section 15(4)(S) of the Act authorizes the Commission to suspend or revoke a real estate license on proof that a licensee is guilty of "establishing an association, by employment or otherwise, with an unlicensed person who is expected or required to act as a real estate licensee, or aiding or abetting or conspiring with a person to circumvent the requirements of this Act."

**4.** Applicants for a real estate license must pledge that they have not performed and will not perform activities requiring a license until they obtain such license. According to the Commission, the employees of UHR violated this pledge by working for UHR prior to obtaining a license.

**5.** The case was assigned to a different judge.

that as applied the statute violated UHR's first amendment rights of commercial speech. *United Home Rentals v. Texas Real Estate Commission,* 548 F.Supp. 566 (N.D.Tex.1982). The district court also held that the parties had "settled any question of abstention" by stipulating that they waived their rights to demand abstention. *Id.* at 570.

## II.

While we are impressed by the parties' maneuvers to get an initial ruling on the first amendment question from a federal court, we cannot overlook the serious and repeated procedural transgressions that have taken place in the course of this action. Arguably, the claim advanced in this second federal action is precluded by the first federal judgment. Certainly, the initial review of the constitutionality of a state agency's interpretation of its own rules is a matter that the federal courts should undertake only when circumstances warrant it and abstention would serve no purpose. The instant case presents a paradigm of a situation in which the correct action for the federal courts is to abstain. In short, we should not entertain this case.

### Res Judicata

Res judicata is a judicially-created doctrine designed to avoid repeated litigation of the same claims by the same parties. "True" res judicata, or "claim preclusion," as aptly defined by Judge Rubin of our court,

> treats a judgment once rendered, as the full measure of relief to be accorded be-

tween the same parties on the same "claim" or "cause of action." . . . When the plaintiff obtains a judgment in his favor, his claim "merges" in the judgment; he may seek no further relief on that claim in a separate action. Conversely, when a judgment is rendered for a defendant, the plaintiff's claim is extinguished; the judgment then acts as a "bar". . . . Under these rules of claim preclusion, the effect of a judgment extends to the litigation of all issues relevant to the same claim between the same parties, whether or not raised at trial.[6]

In its earlier action, UHR asserted that the statute was unconstitutional as applied on both first amendment and equal protection grounds. The record indicates that the *UHR I* court refused to decide the first amendment question. Nonetheless, if on these facts UHR's first amendment and equal protection arguments are part of the same "claim" for res judicata purposes, the judgment of the district court in *UHR I* may bar UHR from subsequently attacking the statute on either theory.

The definition of a claim or cause of action for res judicata purposes in the federal system, where joinder of claims is not mandatory,[7] has been much debated.[8] This Circuit has definitively established as the standard to be applied in determining whether the substance of the two actions is the same for res judicata purposes the transactional test of a "claim" enunciated in the Second Restatement of Judgments. *Nilsen v. City of Moss Point,* 701 F.2d 556, 559–60 & n. 4 (5th Cir.1983) (en banc).[9] The

---

6. *Kaspar Wire Works, Inc. v. Leco Engineering & Machine, Inc.,* 575 F.2d 530, 535 (5th Cir. 1978). In this opinion we likewise use the term "res judicata" to refer to claim preclusion, as opposed to collateral estoppel, or issue preclusion. *See Kaspar Wire Works,* 575 F.2d at 535–36 (discussing distinction).

7. Fed.R.Civ.Proc. 18 provides for permissive joinder of claims in the federal courts.

8. *See generally* Wright & Miller, Federal Practice and Procedure: Jurisdiction, § 4407 (West 1978) (advocating transactional definition).

9. § 24. Dimensions of "Claim for Purposes of Merger or Bar—General Rule Concerning "Splitting"
(1) When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar (see §§ 18, 19), the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.
Restatement (Second) of Judgments (1982).
The drafters of the Second Restatement offer the following comment:

transaction involved here is the Commission's demand that all UHR employees "that communicate with the public" be licensed [10] and UHR's contention that the federal Constitution bars the Commission from interpreting the statute in this fashion. Applying this test, it appears that the "cause of action" sought to be asserted by UHR in this action is the same as that decided adversely to UHR in *UHR I*.[11] *Cf. Jones v. Texas Tech Univ.*, 656 F.2d 1137 (5th Cir.1981) (affirming district court dismissal of second suit as barred by res judi-cata where plaintiff denied permission to demonstrate without restriction alleged first amendment and due process violations in first suit, consent judgment was entered, and plaintiff subsequently asserted due process claim based on University's conduct of disciplinary proceedings); *Southern Jam, Inc. v. Robinson*, 675 F.2d 94 (5th Cir.1982) (affirming district court dismissal on res judicata grounds where plaintiff challenged regulation preventing it from holding concert on federal equal protection and due process grounds in state court, received ad-

A. *Rationale of a transactional view of claim.* In defining claim to embrace all the remedial rights of the plaintiff against the defendant growing out of the relevant transaction (or series of connected transactions), this Section responds to modern procedural ideas which have found expression in the Federal Rules of Civil Procedure and other procedural systems.

"Claim," in the context of *res judicata,* has never been broader than the transaction to which it related. But in the days when civil procedure still bore the imprint of the forms of action and the division between the law and equity, the courts were prone to associate claim with a single theory of recovery, so that, with respect to one transaction, a plaintiff might have as many claims as there were theories of the substantive law upon which he could seek relief against the defendant. Thus, defeated in an action based on one theory, the plaintiff might be able to maintain another action based on a different theory, even though both actions were grounded upon the defendant's identical act or connected acts forming a single life-situation. In those earlier days there was also some adherence to a view that associated claim with the assertion of a single primary right as accorded by the substantive law, so that if it appeared that the defendant had invaded a number of primary rights conceived to be held by the plaintiff, the plaintiff had the same number of claims, even though they all sprang from a unitary concurrence [sic]. There was difficulty in knowing which rights were primary and what was their extent, but a primary right and the corresponding claim might turn out to be narrow. Thus it was held by some courts that a judgment for or against the plaintiff in an action for personal injuries did not preclude an action by him for property damage *occasioned by the same* negligent conduct on the part of the defendant—this deriving from the idea that the right to be free of bodily injury was distinct from the property right.

Still another view of claim looked to sameness of evidence; a second action was pre-cluded where the evidence to support it was the same as that needed to support the first. Sometimes this was made the sole test of identity of claim; sometimes it figured as a positive but not as a negative test; that is, in certain situations a second action might be precluded although the evidence material to it varied from that in the first action. Even so, claim was not coterminous with the transaction itself.

The present trend is to see claim in factual terms and to make it coterminous with the transaction regardless of the number of substantive theories, or variant forms of relief flowing from those theories, that may be available to the plaintiff; regardless of the number of primary rights that may have been invaded; and regardless of the variations in the evidence needed to support the theories or rights. The transaction is the basis of the litigative unit or entity which may not be split.

Restatement (Second) of Judgments, § 24 comment A. (1982).

The Restatement further specifies:

6. C. Transaction may be single despite different harms, substantive theories, measures or kinds of relief. That a number of different legal theories casting liability on an actor may apply to a given episode does not create multiple transactions and hence multiple claims. This remains true although the several legal theories depend on different shadings of the facts, or would emphasize different elements of the facts, or would call for different measures of liability or different kinds of relief....

Restatement (Second) of Judgments, § 24 comment C. (1982).

10. Counsel for the Commission so defined at oral argument the group of employees whom the Commission feels require licensure.

11. As counsel for UHR conceded at trial, discussing the prior action: "The facts haven't changed a whit really. You have a different standard." Tr. at 7.

verse judgment, and subsequently filed first amendment claim in federal court) (applying Georgia law).

As we stated in *Nilson:*

That the issue presented here was never decided in the former case does not signify; according to general theories of judicial estoppel, to which "federal courts have traditionally adhered," it is blackletter law that *res judicata,* by contrast to narrower doctrines of issue preclusion, bars all claims that were or *could have been* advanced in support of the cause of action on the occasion of its former adjudication, *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980) [issue preclusion by state judgment in § 1983 action, dicta that claim preclusion doctrine equally applicable], not merely those that were adjudicated. And it is equally settled that one who has a choice of more than one remedy for a given wrong ... may not assert them serially, in successive actions, but must advance all at once on pain of bar.

701 F.2d at 560.

■ Despite our conviction that these plaintiffs have had two bites at the apple, we are reluctant to dispose of this appeal on res judicata grounds. First, res judicata is an affirmative defense, and the Commission has not raised it either at trial or before us. Rather, both parties have treated *UHR I* simply as precedent, using it for the proposition that the statutes in question as applied to rental information agencies have survived a rational relationship test. This failure to assert res judicata as a defense does not determine the issue, however, since in the interest of judicial economy res judi-

cata may properly be raised by a district court sua sponte, particularly where both actions are brought in the courts of the same district. *See Boone v. Kurtz,* 617 F.2d 435, 436 (5th Cir.1980) (affirming district court sua sponte dismissal on res judicata grounds); *Willis v. Fournier,* 418 F.Supp. 265, (D.C.Ga.), *aff'd* 537 F.2d 1142 (5th Cir. 1976); *Hicks v. Holland,* 235 F.2d 183 (6th Cir.), *cert. denied,* 352 U.S. 855, 77 S.Ct. 83, 1 L.Ed.2d 66 (1966) (same). On occasion, appellate courts have raised the issue for the first time on appeal. *See Robertson v. Interstate Securities Co.,* 435 F.2d 784, 787 n. 4 (8th Cir.1971); *Wilson v. United States,* 166 F.2d 527, 529 (8th Cir.1948). In these cases, however, the appellate court considered applying res judicata as a means to affirm the district court decision below.

■ On these facts, we decline to take the drastic step of invoking res judicata for the first time on appeal and reversing the district court below as a consequence. What scanty evidence of the prior action appears on this record indicates that, far from having a full and fair opportunity to litigate the first amendment issue in the prior action,[12] plaintiffs were expressly denied that opportunity by the district court.[13] While the proper course for UHR's counsel would have been to appeal the refusal of the district court to hear his first amendment claim, rather than to refile, it appears unduly harsh to preclude UHR from having its first amendment argument heard because of this procedural error. *See Howell v. State Bar of Texas,* 674 F.2d 1027 (5th Cir.1982), *vacated and remanded on other grounds,* —— U.S. ——, 103 S.Ct. 1515, 75 L.Ed.2d 942 (1983) (where plaintiff withheld

---

**12.** *Compare Nilson,* 701 F.2d at 564 (claims of second suit barred by res judicata "since ... the procedural system offered a full and fair opportunity for litigation of [the theory asserted in the second suit] had it been presented").

**13.** Plaintiff's counsel stated at trial:

And I want to be clear with the Court. I have a consideration that it looks like I'm taking two bites of the apple. I attempted to get Judge Porter to hear this argument. When he wouldn't and reserved it for another time, before I refiled, I attempted—I assumed I needed to refile in his Court and was told,

no, I shouldn't; I should file it normally. And when we filed it, I checked with your clerk to see if it should be transferred to Judge Porter, and he said, "No, this is where it should be." I wanted to be clear with the Court that I'm not attempting to back door you, that there has been another—I may have done something to your clerk.

THE COURT: Well, you got him in trouble. He could have let it go back to Judge Porter.

MR. BRUTSCHE: I don't think Judge Porter wanted it back, Judge.

his federal constitutional arguments from the state courts after the federal district court erroneously relegated him to the state system with a promise that he could return with his federal claims, plaintiff did not have a full and fair opportunity to litigate those claims and would not be barred by res judicata.)

We must also consider whether the prior federal judgment has any collateral estoppel effects in this action. Collateral estoppel, or issue preclusion, bars relitigation of issues actually litigated and necessarily adjudicated in a prior proceeding between the same parties. Here, the district court in *UHR I* ruled: 1) that the statute did require plaintiff's employees performing the activities in question to be licensed, and 2) that this interpretation of the licensing requirement bore a rational relationship to a legitimate state end of consumer protection. Thus, in this second suit, the affirmative defense of collateral estoppel, if asserted, would bar the plaintiffs from relitigating either 1) that the statute did not require licensure of their clerical-type employees, or 2) that such a requirement violated their due process rights. Neither the parties nor the court below, however, raised any estoppel issue. Rather, the court below implicitly redetermined, *de novo,* the question of the statute's applicability in ruling that as applied to UHR's clerical-type employees the statute violated UHR's first amendment rights of commercial speech.

The parties to this litigation and the court below have consistently treated the prior litigation as of no more than precedential effect. We see no occasion to declare on our own motion that the prior judgment has more than precedential value. Accordingly we decline to ourselves raise and apply collateral estoppel to the court's findings in *UHR I.*

### Abstention

The landmark case of *Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), established the principle that "a federal court may, and ordinarily should, refrain from deciding a case in which state action is challenged in federal court as contrary to the federal constitution if there are unsettled questions of state law that may be dispositive of the case and avoid the need for deciding the constitutional question." [14] While the doctrine of abstention has developed extensively over the years since *Pullman,*[15] *Pullman* abstention remains the best-settled of the abstention variants.

One type of case almost universally recognized as appropriate for abstention is that of a state statute, not yet construed by the state courts, which is susceptible of one construction that would render it free from federal constitutional objection and another that would not. A federal

---

**14.** "Abstention in such circumstances not only serves to minimize federal-state friction, but also avoids premature and perhaps unnecessary constitutional adjudication." *Kusper v. Pontikes,* 414 U.S. 51, 94 S.Ct. 303, 38 L.Ed.2d 260 (1973), *citing Harman v. Forssenius,* 380 U.S. 528, 534, 85 S.Ct. 1177, 14 L.Ed.2d 50 (1965). *See generally* Wright & Miller, *supra,* at § 4242, and cases cited *id.* in notes 3 and 4.

**15.** The principal abstention doctrines that have been recognized in addition to *Pullman* abstention are *Burford* and *Younger* abstention. *Burford* abstention is appropriate where a major case presents issues of state law such that the state has an overriding interest in their determination. *See Colorado River Water Conservation District v. United States,* 424 U.S. 800, 814, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976); *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943); *BT Investment*

*Managers, Inc. v. Lewis,* 559 F.2d 950, 955 (5th Cir.1977). A federal court may invoke *Burford* abstention "to avoid needless conflict with the administration by the state of its own affairs." Wright, Federal Courts § 52, at 222 (3d ed. 1976). *Younger* abstention is appropriate "where absent bad faith, harassment, or a patently invalid state statute, federal jurisdiction has been invoked for the purpose of restraining state criminal proceedings." *Colorado River Water Conservation District v. United States,* 424 U.S. at 816, 96 S.Ct. at 1245; *see Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). *See generally* Field, The Abstention Doctrine Today, 125 U.Pa.L.Rev. 590 (1977). We do not attempt a full discussion of abstention doctrine in its myriad variations here; it is not necessary. This opinion merely discusses the applicability of *Pullman*-type abstention to the facts of this case.

court should not place itself in the position of holding the statute unconstitutional by giving it the latter construction, only to find that the highest court of the state will render the decision futile and unnecessary by adopting the former. Such a decision not only is a waste of judicial resources but provokes a needless collision between state and federal power. Friendly, Federal Jurisdiction: A General View, 93 (1973).[16]

The facts of this case fall squarely within the well-defined ambit of *Pullman* abstention. "In the bulk of abstention cases in this Court, the unsettled issue of state law principally concerned the applicability of the challenged statute to a certain person or a defined course of conduct, whose resolution in a particular manner would eliminate the constitutional issue and terminate the litigation." *Baggett v. Bullitt,* 377 U.S. 360, 376–78, 84 S.Ct. 1316, 1325–26, 12 L.Ed.2d 377 (1964) (citations omitted), *see* cases cited *id.,* n. 12. Here, UHR asserts that the Commission's interpretation of the statute, which would require licensure of UHR employees engaged in clerical tasks, is unconstitutional. As with any constitutional challenge to a statute "as applied," this claim involves two questions: 1) Is the Commission's interpretation of the statute correct? 2) Does that interpretation violate the federal constitution?

The former is a question of state law which, as far as this record indicates, has not been reviewed by the state courts. It is, moreover, a question dispositive of the constitutional questions: if a state agency or court were to find that the Commission had erred in concluding that UHR's clerical employees had to be licensed, the constitutional issues hotly contested here would obviously be moot. The outcome of the administrative proceedings now pending against Messrs. Livingston and Bushman— or a state court appeal from those proceedings—could moot or significantly modify the constitutional question before us.[17]

■ In the proceedings below, the parties attempted to preclude abstention and force a resolution of the constitutional issue in the federal courts by stipulating that they waived "their right to assert or demand abstention by the Court." *UHR I, supra,* at 570. The district court concluded that this stipulation "settled any questions of abstention." *Id.* This was error. Because the abstention doctrine is designed to balance the interests of the federal and state judicial systems and to avoid unnecessary adjudication of constitutional issues, a federal court should decide for itself whether to abstain on its own motion in *Pullman*-type cases, regardless of the wishes of the parties.[18] Accordingly, we now consider the propriety of abstention[19] on the facts of this case.[20]

**16.** *See, e.g., Pullman, supra; Colorado River Water Conservation District v. United States,* 424 U.S. at 814, 96 S.Ct. at 1244 (1976); *Reetz v. Bozanich,* 397 U.S. 82, 85–87, 90 S.Ct. 788, 789–790, 25 L.Ed.2d 68 (1970); *Babbitt v. United Farm Workers, National Union,* 442 U.S. 289, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979); *Palmer v. Jackson,* 617 F.2d 424 (5th Cir.1980); *Ibarra v. Bexar County Hospital District,* 624 F.2d 44 (5th Cir.1980); *Central Power and Light Co. v. P.U.C. of Texas,* 592 F.2d 234 (5th Cir.1979).

**17.** Our holdings on the res judicata and collateral estoppel questions leave the state agency or courts free to make the initial review of the Commission's action.

**18.** *See Ohio Bureau of Employment Services v. Hodory,* 431 U.S. 471, 480 n. 11, 97 S.Ct. 1898, 1904 n. 11, 52 L.Ed.2d 513 (1977); *Bellotti v. Baird,* 428 U.S. 132 n. 10, 96 S.Ct. 2857, 49

L.Ed.2d 844; *Empire Distributing Co. v. City of Fort Worth,* 273 F.2d 529 (5th Cir.1960).

**19.** Our review of the district court's refusal to abstain is predicated on a de novo standard. This circuit adopted a de novo standard of review of a district court's decision to invoke or refuse to invoke *Pullman* abstention in its recent en banc decision in *O'Hair v. White,* 675 F.2d 680 (5th Cir.1982). *See also Ziegler v. Ziegler,* 632 F.2d 535 (5th Cir.1980) (de novo review); *cf. Brooks v. Walker County Hospital District,* 688 F.2d 334, 336 n. 4 (5th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 2452, 77 L.Ed.2d 1332 (1983) (discussing correct standard of review).

**20.** "The necessity for abstention is to be determined by principled discretion not doctrinaire adherence; its application must, therefore, be decided on a case-by-case basis." *Gibson v. Jackson,* 578 F.2d 1045, 1048 (5th Cir.1978),

Initially, we note that the ambiguity of state law necessary to *Pullman* abstention exists here. We do not agree with the parties that the Real Estate License Act and the regulations promulgated thereunder clearly require licensing of UHR employees performing clerical tasks.[21]

The rules specifically authorize a real estate broker to employ unlicensed clerical employees and to have an answering service which gives out information as to properties available.[22] Arguably, UHR's employees who answer the telephone do no more than the clerical or secretarial employees of any broker who also "communicate with the public" by answering the phone.

The other rules which the state attempts to apply to UHR employees are similarly ambiguous. For example, the rules state that the compilation and sale of rental information is "an activity requiring licensure,"[23] but this language does not preclude the reasonable interpretation that while this activity must be done in the office of a licensed broker fully accountable for the

acts of his employees, not every physical act involved in the compilation need be performed by a licensed broker.[24] Again, the rules require licensure of rental agents engaging in "solicitation"—"unless such agents are employees of the owner of the property concerned."[25] This rule apparently refers to "solicitation" on behalf of property owners—i.e. solicitation of prospective *tenants*—not the gathering of information about other rental properties. The record indicates that UHR does not solicit tenants for a particular landlord, but rather subscribers to its information service. We express no opinion on how the rules ought to be interpreted;[26] we seek only to show that, taken together, the rules are susceptible of a construction which would moot or significantly modify the constitutional issue.[27]

We cannot rule out the strong possibility that the state agency or the state courts will interpret the regulations at issue so as to obviate any potential first amendment violation.[28]

---

*cert. denied,* 439 U.S. 1119, 99 S.Ct. 1028, 59 L.Ed.2d 79 (1979) (citations omitted).

21. Nor are we bound, as the district court mistakenly believed, by the parties' stipulation to that effect. *See UHR I, supra,* at 570.

22. *See* Rule 402.03.02.003.4 (permitting answering services) and Rule 402.03.02.005.6 (permitting the employment of unlicensed clerical employees).

23. *See* Rule 402.03.010.2(b).

24. Indeed, the state admitted at oral argument that portions of the act of compilation may be performed without a real estate license.

25. *See* Rule 402.03.02.005.5.

26. The parties have not cited, nor has our own research disclosed, any decision from a Texas court construing the specific regulations at issue. Nor have we found any cases dealing with situations so analogous that we could predict, with a reasonable degree of certainty, how the question would be resolved by the highest court of the state. The rules themselves are sufficiently vague and contradictory that they could reasonably be interpreted to require licensure of all UHR employees "communicating with the public," of only some of those employees, or of none. We therefore find that this

case presents an unsettled issue of state law. *See* Field, Abstention in Constitutional Cases: The Scope of the Pullman Abstention Doctrine, 122 U.Pa.L.Rev. 1071, 1090–91 (1974).

27. *Cf. Brooks,* 688 F.2d at 336–7 (analyzing ambiguities of statute which allow *Pullman* abstention).

28. We note that during these proceedings the Commission has already reversed itself and granted licenses to those UHR employees previously denied licenses on the ground that as UHR employees they were engaging in activities requiring licensure without having a license. Perhaps the Commission is similarly willing to reconsider its position vis-a-vis the revocation of the licenses of Messrs. Livingston and Bushman and to reach an accommodation with UHR.

Indeed, cases cited by the parties demonstrate that several state appellate courts have mooted any potential first amendment issue in similar fact situations either by ruling that the state licensing statute in question did not require licensure of clerical-type employees of rental information agencies, *see Real Estate Commission of Maryland v. Phares,* 268 Md. 344, 302 A.2d 1 (Md.1973) (rental information services not brokering within real estate licensing statute); *State of Minnesota v. Beslanoviwitch,* 311 Minn. 56, 248 N.W.2d 286 (Minn.

In reaching the decision that abstention is necessitated by the facts of this case, we have taken into account the disadvantages usually considered consequent to abstention: "piecemeal results and delay." *Ross v. Houston Independent School Dist.,* 559 F.2d 937, 942 (5th Cir.1977). A review of the facts of this case, however, reveals that those very problems would be exacerbated by our entertaining the claims presented here. The record reveals that before bringing this quarrel to federal court as a constitutional matter, the parties were engaged in a process of negotiation and compromise as to the scope of the licensing requirement.[29] This action has halted not only that process but state proceedings in which the parties could have arrived at a mutually satisfactory interpretation of the licensing requirements. For a federal court to adjudicate this controversy as a constitutional matter at this stage would indicate to other parties engaged in similar discussions with state agencies—and to the agencies themselves—that the federal courts will provide a ready solution to local disputes over state regulations.

> If [such state proceedings] are stayed, whether by stipulation or otherwise, while these issues are litigated over the course of several years through the tiers of the federal system, the possibilities of delay and piecemeal resolution are interminably expanded. Such an encroachment of the federal government into ongoing state proceedings would be unseasonable and obtrusive. The "delay and expense to which application of the ab-

stention doctrine inevitably give rise," *Bellotti v. Baird,* 1976, 428 U.S. 132, 150, 96 S.Ct. 2857, 2868, 49 L.Ed.2d 844, quoting *England v. Medical Examiners,* 1964, 375 U.S. 411, 418, 84 S.Ct. 461, 466, 11 L.Ed.2d 440, 446, would be even more acute if we did not abstain here.

*Gibson v. Jackson,* 578 F.2d at 1050–51.

*Pullman* mandates that a federal court faced with an initial review of a state agency's application of its own regulations, where that application is challenged on constitutional grounds, should abstain, absent compelling circumstances, in order to allow the state agency and the state courts first review of the interpretation of state law at issue and to avoid unnecessary constitutional adjudication.

The facts of this case require abstention under *Pullman.* On remand, the district court should dismiss this action without prejudice.[30]

The judgment below is

REVERSED AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION.

TATE, Circuit Judge, dissenting.

I respectfully dissent. I would affirm on the basis of the district court opinion. *United Home Rentals v. Texas Real Estate Commission,* 548 F.Supp. 566 (N.D.Tex. 1982).

The Texas statute, if enforced as consistently interpreted and applied by the Texas

---

29. These negotiations had progressed to the point where UHR was willing to ensure that all original gathering of rental information would be done by licensed employees. The major sticking point appears to have been whether licensure would be required for employees calling to verify information.

30. Usually a district court retains jurisdiction over a case when it abstains on *Pullman* grounds. However, the quirks of Texas law preclude retention of federal jurisdiction and thus dismissal without prejudice is the correct disposition. *See generally Moore v. El Paso County,* 660 F.2d 586 (5th Cir.1981), *cert. denied,* —— U.S. ——, 103 S.Ct. 51, 74 L.Ed.2d 57 (1982).

1976) (same); or by enjoining such an application of the statute on state or federal constitutional grounds. *See Anderson v. Department of Real Estate,* 155 Cal.Rptr. 307, 93 Cal.App.3d 696, 699 (1979) (first amendment grounds); *United Interchange v. Spellacy,* 144 Conn. 647, 136 A.2d 801 (1957) (due process grounds); *United Interchange, Inc. v. Harding,* 154 Me. 128, 145 A.2d 94 (1958) (first amendment and due process grounds); *North Carolina Real Estate Licensing Board v. Aikens,* 31 N.C.App. 8, 228 S.E.2d 493 (1976) (state due process grounds); *but see Whitaker v. Arizona Real Estate Board,* 26 Ariz.App. 347, 548 P.2d 841 (1976) (where rental information service also counseled clients regarding property licensing statute constitutional as applied).

administrative agency, in my view infringes on the plaintiffs' first amendment rights. The plaintiffs are clearly aggrieved by that interpretation and enforcement in their own instances. Neither the Attorney General of Texas in his brief and argument in this court, nor the plaintiffs, argue that the statute is ambiguous, as the panel majority holds, and in my opinion no grounds exist for *Pullman* abstention—neither party raises the issue that the statute is not applied in accordance with its terms, see also district court, 548 F.Supp. at 570 ("No ambiguity in statute."). Thus interpreted and applied by the agency authoritatively entrusted with its administration, the statute is, it seems to me, unconstitutional on first amendment commercial free speech grounds. See 548 F.Supp. at 571–75.

Insofar as the parties are concerned, the panel opinion mostly deals with non-issues. The res judicata-collateral estoppel issue, not even raised by the State, seems to me to involve ultra-technical concerns that, upon full reflection, would not justify application of res judicata or collateral estoppel without fundamental disregard of the functional purposes of those principles and of the principles that underlie the Federal Rules of Civil Procedure.

Application here of the *Pullman* principle, expressly eschewed by the appellant State, serves only to delay and fragment decision of the central issue squarely raised by this litigation: Are the plaintiffs aggrieved by the requirement that they or their employees obtain real estate licenses to engage in commercial free speech protected against governmental restriction by the first amendment of the federal constitution? Texas argues that they are not—that it is entitled to exact licenses from employees before permitting them to exercise the free speech rights here at issue, under the unambiguous terms of the statute as authoritatively construed and consistently applied by the Texas agency entrusted with its administration. That the licenses to the employees were granted by the state agency does not moot the plaintiffs' claims, nor does it cast into doubt the still-asserted claim of Texas that licenses *are* unambiguously re-

quired by the Texas statute—unconstitutionally, the plaintiffs urge.

No grounds for *Pullman* abstention exist, in my opinion, and the panel is in error in not deciding on the merits the constitutional issue squarely posed to us.